*Attorney Grievance Commission v. Joseph Michael Stanalonis*
Misc. Docket AG No. 74, September Term 2013

**Attorney Discipline – Judicial Elections – Statements Concerning Candidate for Judicial Office.** A campaign flyer of a candidate for judicial office stated that the opposing candidate "[o]pposes registration of convicted sexual predators." There was not clear and convincing evidence that the statement violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") when the hearing judge found that the candidate responsible for the flyer believed, and had a "demonstrable basis" for believing, the statement to be true. MLRPC 8.2(a), 8.4(c) & 8.4(d).

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 74

September Term, 2013

ATTORNEY GRIEVANCE
COMMISSION OF
MARYLAND

v.

JOSEPH M. STANALONIS

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T.
(Retired, Specially
Assigned),

JJ.

Opinion by McDonald, J.
Watts, J., concurs and dissents;
Harrell, J., dissents.

Filed: November 23, 2015

This case arose out of a hotly-contested primary election campaign for a position on the Circuit Court for St. Mary's County. An experienced prosecutor in the County sought to unseat a newly-appointed judge who, during the course of his career, had represented defendants in criminal cases in the County. As in many election campaigns, each candidate touted, with some exaggeration, his own experience and credentials. And each candidate disparaged, in various ways and without absolute accuracy, those of his opponent. The question before us is whether there is clear and convincing evidence that a statement in the challenger's campaign flyer was made with knowledge that it was false or with reckless disregard of its truth or falsity and therefore violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").

The Attorney Grievance Commission ("Commission") charged Respondent Joseph M. Stanalonis with violating MLRPC 8.2(a) (false statement as to qualification or integrity of a judge, public legal officer, or candidate for such office), MLRPC 8.4(c) (misconduct involving dishonesty, fraud, deceit, or misrepresentation), and MLRPC 8.4(d) (misconduct prejudicial to the administration of justice) by virtue of three statements about his opponent in a campaign flyer circulated on his behalf. Pursuant to Maryland Rule 16-752(a), this Court designated Judge Melanie M. Shaw Geter of the Circuit Court for Prince George's County[1] to conduct a hearing

---

[1] The matter was originally assigned to a judge of the Circuit Court for St. Mary's County, but was later re-assigned to Judge Shaw Geter.

concerning the alleged violations and to provide findings of fact and recommended conclusions of law.

Following a hearing at which Mr. Stanalonis was present and represented by counsel, the hearing judge issued findings of fact and recommended conclusions of law. The hearing judge concluded that two of the statements did not violate the MLRPC, but that the third statement violated all of the cited rules, although Mr. Stanalonis had a "demonstrable basis" for making that statement. Mr. Stanalonis excepted to the conclusion that he had violated the MLRPC. We sustain that exception, and, as a result, shall dismiss the charges.

## Background

The hearing judge's fact findings are uncontested.[2] Therefore, we treat them as established. Maryland Rule 16-759(b)(2)(A). Those findings, as well as undisputed matters in the record, establish the following.

*The 2012 Primary Election for Circuit Court Judge*

Mr. Stanalonis was admitted to the Maryland Bar on December 19, 1996 and, since that time, has been employed as an Assistant State's Attorney in St. Mary's County. In January 2012, Mr. Stanalonis declared his candidacy for the Circuit Court for St. Mary's County. His opponent would be David W. Densford, whose appointment to the Circuit Court had been announced by the Governor a few weeks

---

[2] While Mr. Stanalonis registered no objection to the facts found by the hearing judge, he excepted the failure of the hearing judge to make certain additional findings favorable to his case. As a resolution of those exceptions would not affect our disposition of the case, we do not consider them.

earlier. Judge Densford took office on February 3, 2012. The primary election was scheduled for April 3, 2012. In that election, Mr. Stanalonis and Judge Densford would appear on both the Democratic and Republican ballots.[3] As the hearing judge found, both candidates were active in their campaigns and, by all accounts, the ensuing election campaign was vigorous and contentious.

*The Stanalonis Campaign Flyer*

Judge Densford began to distribute campaign material on February 3, 2012, the day of his investiture. The campaign material included signs displaying a photograph of Judge Densford in a judicial robe with the words, "KEEP JUDGE DENSFORD, Experience Matters." Judge Densford later testified that the "experience" to which this referred included: (1) the 60 days he would have served on the bench as of the date of the primary election in April and (2) his prior 27 years in private practice.

On or about March 27, 2012, in response to Judge Densford's campaign material, Mr. Stanalonis' campaign mailed a flyer to voters that purported to contrast the experience and outlooks of the two candidates. The left side of the flyer displayed a photograph of Mr. Stanalonis in a jacket and tie, below which appeared a number of statements about him, such as "16 Years as a St. Mary's County Prosecutor" and "Protecting Our Community, Not the Criminals." The right side of the flyer displayed a photograph of Judge Densford in a Hawaiian shirt, below which appeared a number

---

[3] In a primary election, candidates for judicial office typically appear on the ballots of both principal parties. *See Suessman v. Lamone*, 383 Md. 697, 862 A.2d 1 (2004).

of statements about him, such as "Donated $1,000 to O'Malley on July 14, 2010" and "Opposes your right to elect judges." A panel at the bottom of the flyer displayed a photograph of Mr. Stanalonis with his family and reiterated his experience as a prosecutor. Judge Densford later responded with his own flyer comparing the qualifications of the two candidates. At issue before us is one of the statements in the Stanalonis campaign flyer that appears under Judge Densford's photograph: "Opposes registration of convicted sexual predators."[4]

*Evidence concerning Judge Densford's Views on Sex Offender Registration*

Both Mr. Stanalonis and Judge Densford testified in this proceeding. Mr. Stanalonis testified that Judge Densford, while in private practice, had represented defendants in criminal cases involving sex-related offenses and that Mr. Stanalonis and his colleagues in the State's Attorney's Office had dealt with him in that capacity. Mr. Stanalonis testified that Judge Densford had told him, in conversations related to the representation of his clients, that he "was opposed to the registration because it was a long-lasting − life-long impact on [defendants] and would carry with them forever," and moreover "that the punishment should be what it is in the statute for

---

[4] In the charges initiating this proceeding, the Commission alleged that two other statements under Judge Densford's photograph ("As Judge, has never sentenced a single criminal to jail" and "Opposes your right to elect judges") also constituted professional misconduct by Mr. Stanalonis. The hearing judge concluded that one statement (concerning Judge Densford's sentencing experience) was literally true when it was made, and that the second was, at worst, a misunderstanding of a nuanced position taken by Judge Densford in support of publicizing a county bar association resolution opposing the election of judges. The hearing judge concluded that neither of those statements violated the MLRPC. The Commission has not excepted to the hearing judge's findings of fact or conclusions of law with respect to those statements and we do not consider them further.

4

the particular sex offense and that if the crime called for a maximum incarceration of ten years, that the maximum [time that] these individuals should be under the supervision of the Court should be ten years." The hearing judge found, based on Mr. Stanalonis' testimony, that Mr. Stanalonis "determined that [Judge] Densford opposed the [sex offender] registry" through "conversations surrounding the issue and interactions with fellow prosecutors."

Judge Densford, for his part, testified that he had not expressed opposition to the registration of sex offenders as a general matter. During his testimony he was asked, "At any time prior to your appointment on December 22, 2011, in your capacity as a private person or as a criminal defense attorney, did you express opposition to the registration of convicted sexual predators?" He replied, "No. Not as a group. I did when I represented individuals. I didn't want particular people to have to register and would negotiate that. That had nothing to do with the offender registry. It had to do with representation." He explained that he had sought to avoid having his clients "plead[] to [charges] that would get them registered as sexual offenders." He testified that he preferred "a plea to assault instead of something that put them on the registry." He stated that he did not believe that he had made a blanket statement opposing registration of sex offenders generally.

The hearing judge found the testimony of Mr. Stanalonis and Judge Densford "equally compelling." In particular, she found credible Mr. Stanalonis' testimony that Judge Densford routinely opposed registration of his clients on the sex offender registry while he was a defense attorney. On the other hand, she also credited Judge

5

Densford's testimony that, while he had opposed plea arrangements that would result in his clients being placed on the sex offender registry, he had not discussed the topic with Mr. Stanalonis outside the context of representation of a client. She also noted that Judge Densford had never made a public statement concerning the sex offender registry.

In the end, the hearing judge found that Mr. Stanalonis "had a demonstrable basis for believing that [Judge] Densford opposed the Sex Offender Registry." But in concluding that Mr. Stanalonis had violated the MLRPC, she also opined that he should have made a "more substantial effort" to ensure the accuracy of the statement. Later in her opinion, she reiterated that it was not acceptable for a lawyer "to make representations regarding the identity or opinion of a public official, specifically a judge, without conducting a full and thorough investigation into the accuracy of the assertion."

*Election Results*

On April 3, 2012, Judge Densford won the Democratic primary election; Mr. Stanalonis won the Republican primary election. Both advanced to the November 2012 general election where Judge Densford ultimately prevailed.

*Complaint concerning Stanalonis Flyer*

In the interim, on April 20, 2012, attorney George E. Meng had filed a complaint against Mr. Stanalonis with the Maryland Judicial Campaign Conduct

Committee, Inc. ("MJCCC"),[5] a private entity devoted to promoting standards of the conduct for judicial elections in Maryland. The MJCCC found several violations of its standards for contested judicial elections. The Commission cited the MJCCC's conclusions in the charges that initiated this case.

## Discussion

In her recommended conclusions of law the hearing judge proposed that we hold that Mr. Stanalonis violated MLRPC 8.2(a), 8.4(c), and 8.4(d) based on the statement in his campaign flyer that Judge Densford "[o]pposes the registration of convicted sexual predators." Mr. Stanalonis excepted to that recommendation. The Commission did not file any exceptions to the hearing judge's findings of fact or recommended conclusions of law.

We review recommended conclusions of law without deference to the hearing judge pursuant to Maryland Rule 16-759(b)(1). In the course of that review, we consider any exceptions filed by the parties.

### A.    MLRPC 8.2(a)

MLRPC 8.2(a) provides, in pertinent part, that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer, or

---

[5] The Maryland Judicial Campaign Conduct Committee was created in 2005. It has established certain standards for the conduct of contested judicial elections in Maryland and asks candidates to pledge to adhere to those standards. *See* www.mdjccc.org>. During the 2012 primary election, Judge Densford agreed to abide by those standards; Mr. Stanalonis did not.

7

public legal officer, or of a candidate for election or appointment to judicial or legal office." MLRPC 8.2(a). To establish a violation of this rule, three things must be proven by clear and convincing evidence: (1) that the lawyer made a false statement; (2) that the statement concerned the qualifications or integrity of a judge or a candidate for judicial office; and (3) that the lawyer made the statement with knowledge that it was false or with reckless disregard as to its truth or falsity.[6] In this case, the parties have focused on the third element – whether the statement in Mr. Stanalonis' campaign flyer was made with knowledge that it was false or with reckless disregard as to its truth or falsity.[7]

---

[6] The rule is based on a model rule proposed by the American Bar Association. *See* American Bar Association, Annotated Model Rules of Professional Conduct 651 (8th ed. 2015). Courts in other states that have adopted the rule have also recognized that it requires proof of these three elements. *See In re Charges of Unprofessional Conduct Involving File No. 17139*, 720 N.W. 2d 807, 813 (Minn. 2006).

[7] Although not at issue before us, there may be a question as to whether the second element of MLRPC 8.2(a) is met – *i.e.*, whether this statement relates to the qualifications or integrity of a judicial candidate. While a particular view about the utility of sex offender registration may or may not be politically advantageous, it is not at all clear that it relates to the "qualifications or integrity" of a judicial candidate. "[O]pinions that a lawyer may have expressed before becoming a judge, or a judicial candidate, do not disqualify anyone for judicial service because every good judge is fully aware of the distinction between the law and a personal point of view." *Republican Party of Minnesota v. White*, 536 U.S. 765, 798 (2002) (Stevens, J., dissenting); *see also* Code of Judicial Conduct, Rule 2.2, *comment* 2 ("although each judge comes to the bench with a unique background and personal philosophy, a judge must interpret and apply the law without regard to whether the judge approves or disapproves of the law in question"). Apparently, Mr. Stanalonis thought otherwise in including the statement on his campaign flyer and presumably that is why he did not argue that the second element was lacking.

8

*1. The Election Context*

This Court has applied the MLRPC, and MLRPC 8.2(a) in particular, to statements made by lawyers in a variety of contexts. *See Attorney Grievance Comm'n v. Frost*, 437 Md. 245, 359-68, 85 A.3d 264 (2014) (statements by an attorney about judges and other public officials made in email sent to ex-wife and later forwarded to other attorneys); *cf. Attorney Grievance Comm'n v. Gansler,* 377 Md. 656, 835 A.2d 548 (2003) (statements made by prosecutor about pending cases in press conferences). This case involves a statement made in the context of an election campaign. This context is relevant for three reasons.

First, as the Supreme Court has observed, "speech about the qualifications of candidates for public office," including judicial candidates, is "at the core of our First Amendment freedoms." *Republican Party of Minnesota v. White*, 536 U.S. 765, 774 (2002); *see also McCutcheon v. Federal Election Comm'n*, 134 S. Ct. 1434, 1441 (2014) ("the First Amendment 'has its fullest and most urgent application precisely to the conduct of [election] campaigns'") (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)). The speech at issue in this case — which purported to describe the views of a candidate for judicial office — is core political speech and has the highest level of First Amendment protection.[8] This is important because the canon of constitutional

---

[8] The dissenting opinions would ignore or minimize the extent to which the First Amendment constrains government entities in regulating campaign speech. For example, Judge Harrell's opinion relies heavily on the position of the MJCCC in framing its analysis. Dissenting Opinion of Judge Harrell at 1-2, 7 & nn.1-2. Unlike State entities, including this Court, the MJCCC is a private entity not constrained by the First Amendment. As the MJCCC's website explains, it was created in part precisely because the First Amendment limits a state supreme court's ability to

9

avoidance requires that we be cognizant of the constitutional values at stake in construing the MLRPC: to the extent that MLRPC 8.2(a) "'is susceptible of two reasonable interpretations, one of which would not involve a decision as to the constitutionality of the [provision] while the other would, the construction which avoids the determination of constitutionality is to be preferred.'" *G. Heileman Brewing Co. v. Stroh Brewery Co.*, 308 Md. 746, 763, 521 A.2d 1225 (1987) (quoting *Maryland State Board of Barber Examiners v. Kuhn*, 270 Md. 496, 505, 312 A.2d 216 (1973)). Thus, any interpretation of MLRPC 8.2(a) in an election context must take into account the First Amendment protections for speech in election campaigns.

Second, the election context is significant as there inevitably is some imprecision in language used during the heat of a political campaign. There are often short timeframes in which a candidate must respond to claims or criticisms made by an opponent, there may be limited time to vet language, and a short and snappy one-liner usually prevails over a lengthier, more carefully phrased sentence.[9] Opposing

---

restrict candidate speech in judicial elections. *See* <www.mdjccc.org/background.html>.

[9] For example, a campaign flyer supporting Judge Densford's election asserted that the County Judicial Nominating Commission had found Mr. Stanalonis "Not Qualified to be a Judge" when, in selecting among the applicants for appointment to a circuit court position it did not send his name to the Governor. As Judge Densford conceded during his testimony, this was a "technically inaccurate" description of the determination made by the nominating commission. *See* COMAR 01.01.2008.04F & COMAR 01.01.2015.09F (executive orders specifying the function of judicial nominating commissions).

candidates for judicial office do not have the opportunity to depose each other.[10] And campaign flyers are not appellate briefs. In this context, imprecise wording is not necessarily a violation of MLRPC 8.2(a).

Finally, although this particular case arises out of an election for judicial office, MLRPC 8.2(a) also regulates statements by lawyers about "public legal officers," such as the Attorney General and State's Attorneys, and candidates for those elective offices. *Frost*, 437 Md. at 261 & n.9. Thus, whatever we hold in this case will also control what a lawyer may say about a candidate for election as Attorney General or as a State's Attorney.

### 2.   *The Applicable Standard*

In the charges that initiated this case, the Commission alleged that the statement in Stanalonis campaign flyer was "knowingly false" and did not assert that it was made with "reckless disregard" (although the pleading later quoted MLRPC 8.2 in its entirety). Petition for Disciplinary or Remedial Action at p. 3, ¶ 7. In its proposed findings of fact and conclusions of law submitted to the hearing judge following the hearing, the Commission maintained that position and asked the judge to conclude that the statement was "knowingly false," although it argued that a negligent misrepresentation would also violate MLRPC 8.2(a).

As noted above, the hearing judge did not find that the statement was knowingly false, but rather concluded that it was made with "reckless disregard" as

[10] They do not have the opportunity to depose one another about their respective positions unless they do so, as here, well after the campaign during a disciplinary proceeding.

11

to its truth or falsity. Before us, the Commission did not except to the hearing judge's conclusion and has dropped any contention that the statement was "knowingly false."[11] Hence, the relevant standard under MLRPC 8.2(a) is whether the statement was made with "reckless disregard as to its truth or falsity."

### 3. *"Reckless Disregard as to Truth or Falsity"*

In the First Amendment context, "reckless disregard for truth or falsity" evokes the subjective test for civil liability for defamation of a public figure set forth *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Under this test, "reckless disregard for truth or falsity" is not "measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity...." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). The subjective test thus focuses on what the defendant personally knew and thought. The drafters of the model rule from which MLRPC 8.2(a) is derived apparently intended to import this test into the rule. *See* American Bar Association, Model Rules of Professional Conduct, Proposed Final Draft (May 30, 1981) at 206 (explaining that Model Rule 8.2 is consistent with the *New York Times* standard).

---

[11] It thus appears that the Commission did not prove what it actually charged in the Petition for Disciplinary or Remedial Action – a knowing falsehood. It may well be that, in outlining the underlying facts and quoting MLRPC 8.2 in its entirety at the end of the document, the Petition provided adequate notice to the Respondent that the charges against him might be established by proof of a recklessly made falsehood. In any event, Mr. Stanalonis has not excepted on this ground and, in light of our disposition of the case, we need not resolve it.

12

As this Court observed in *Frost,* however, "[t]here appears to be disagreement among the states as to whether the general defamation standard announced in *New York Times*, *i.e.* the subjective test, should apply equally to attorney discipline cases." 437 Md. at 265 n. 11. The Court noted that a number of courts have preferred to develop an objective test not keyed to the knowledge or understanding of the particular lawyer. *Id.* A comparison thus might be made to other contexts where courts must apply a standard of "recklessness" or "reckless disregard." For example, the test for recklessness in the context of reckless endangerment is "whether the [defendant's] misconduct, viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe." *Minor v. State*, 326 Md. 436, 443, 605 A.2d 138 (1992). Such a test is akin to gross negligence. In fact, the definition of "gross negligence" sometimes includes the phrase "reckless disregard." *See, e.g.*, *Cooper v. Rodriguez*, 443 Md. 680, 686, 118 A.3d 829 (2015) ("Gross negligence has been defined as, among things, 'an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.'") (quoting *Barbre v. Pope*, 402 Md. 157, 187, 935 A.2d 699 (2007)); *State v. Pagotto*, 361 Md. 528, 548, 762 A.2d 97 (2000) ("In order for the accused's conduct to constitute gross negligence, the conduct must manifest a wanton or reckless disregard of human life.") (internal quotation marks omitted).

Finally, even if a court would normally favor an objective test in assessing the "reckless disregard" prong of MLRPC 8.2(a), there is a significant argument that a subjective test should be applied in an election context, in light of the "core" First Amendment values at stake. *See In re Charges of Unprofessional Conduct Involving File No. 17139*, 720 N.W. 2d 807, 813-15 (2006) (raising, but not resolving, the question whether the Minnesota Supreme Court would apply a subjective test in evaluating an alleged 8.2(a) violation in an election context, even though that court applies an objective test in other contexts).

In *Frost*, this Court expressly did not resolve whether the test for "reckless disregard" in applying MLRPC 8.2(a) should be a subjective one or an objective one. 437 Md. at 265 n. 11. We need not resolve that question for purposes of deciding this case either, as our resolution is the same under either standard.

*4.     Whether There is Clear and Convincing Evidence of Reckless Disregard*

The question that we must resolve is whether there is clear and convincing evidence that Mr. Stanalonis made a statement concerning Judge Densford's views about sex offender registries with reckless disregard as to the truth or falsity of that statement. In testimony that the hearing judge found credible, Mr. Stanalonis stated that he was familiar with Judge Densford as a criminal defense attorney and with his efforts to keep his clients off the sex offender registry. The hearing judge found that, in reliance on conversations, and interactions with other prosecutors, Mr. Stanalonis "determined [Judge] Densford opposed the registry," although she also found that his determination proved to be incorrect.

14

Perhaps the Stanalonis campaign flyer could have been more precise in its description of his understanding of Judge Densford's position and the source of that understanding. For example, according to Judge Densford's testimony in this proceeding, a sentence that read "While in private practice and representing clients, attorney David Densford opposed placing his clients on the sex offender registry," would have been more accurate than, "Opposes registration of convicted sexual predators." But Mr. Stanalonis was speaking in the context of an election campaign, and MLRPC 8.2(a) does not require absolute precision in the expression of political speech as part of an election campaign. Mr. Stanalonis apparently drew an incorrect inference from his conversations with Judge Densford that Judge Densford opposed the registration of convicted sex offenders generally but, as the hearing judge found, there was a "demonstrable basis" for making this inference.

In short, whatever Judge Densford's true feelings, Mr. Stanalonis appears to have actually believed that Judge Densford opposed the registry according to his testimony (which the hearing judge generally credited). There is no evidence that Mr. Stanalonis "entertained serious doubts as to the truth of his" statement, *see St. Amant*, 390 U.S. at 731. Thus, the statement in the campaign flyer would not satisfy the subjective test for "reckless disregard" as to truth or falsity.

Given the testimony of both Mr. Stanalonis and Judge Densford concerning their discussions of the sex offender registry, the hearing judge's finding that Mr. Stanalonis had a "demonstrable basis for believing" that Judge Densford opposed the

15

sex offender registry finding was not clearly erroneous.[12]   In light of that demonstrable basis, we cannot say that there is clear and convincing evidence that Mr. Stanalonis' belief was a "gross departure" from the understanding that a reasonably prudent lawyer in his position would have.[13]  It is not a gross deviation from the behavior of a reasonable attorney to make a statement that one has a demonstrable basis for believing, even if that belief turns out to be incorrect.

In sum, there is not clear and convincing evidence that the statement in the campaign flyer was made with reckless disregard for the truth or falsity of the statement, regardless of whether a subjective or objective test is applied. Accordingly, we conclude that a violation of MLRPC 8.2(a) has not been proven.

### B.    MLRPC 8.4(c)

MLRPC 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."  This prohibition "is not limited to conduct in the practice of law, but extends to actions by an attorney in business or personal affairs that reflect on the individual's character

---

[12] Although the hearing judge made this finding in a portion of her opinion entitled "Conclusions of Law" discussing the alleged violation of MLRPC 8.2(a), it appears to be a finding of fact, and so we review it for clear error.

[13] In her conclusions of law, the hearing judge observed that, while Mr. Stanalonis had a demonstrable basis for his understanding the Judge Densford had opposed the sex offender registry based on his discussions with Judge Densford and had vetted the statement with others who were familiar with Judge Densford, he should have made "a more substantial effort in ensuring the accuracy" of the statement.  The hearing judge did not indicate what that effort would involve and, short of requiring a candidate to vet campaign material with the opposing candidate, it is not clear what that effort would be.

and fitness to practice law." *Attorney Grievance Comm'n v. Coppock*, 432 Md. 629, 644, 69 A.3d 1092 (2013).

Not all attorney statements that turn out to be untrue violate MLRPC 8.4(c). "While this Court has sometimes drawn fine distinctions among the four horsemen of the rule – dishonesty, fraud, deceit and misrepresentation – each pertains to a false statement by an attorney only if the attorney makes use of the false statement knowing that it is untrue." *Attorney Grievance Comm'n v. Smith*, 442 Md. 14, 34, 109 A.3d 1184 (2015);[14] *see also Attorney Grievance Comm'n v. Mungin*, 439 Md. 290, 310, 96 A.3d 122 (2014) (ordinarily, "this Court will not find a violation of MLRPC 8.4(c) when the attorney's misconduct is the product of negligent rather than intentional misconduct") (internal quotation marks and brackets omitted).

Although it has been suggested on occasion that an attorney might violate MLRPC 8.4(c) by means of a negligent or an "inadvertent" misrepresentation, this Court has generally required that there be a "conscious objective or purpose" to the misrepresentation or omission and the facts of those cases might be more aptly described as intentional failures to communicate truthful information, as opposed to negligent falsehoods. *See Attorney Grievance Comm'n v. Nwadike*, 416 Md. 180, 194-95, 6 A.3d 287 (2010) (respondent violated MLRPC 8.4(c) when she acted with a

---

[14] "Dishonesty is the broadest of the four terms, and encompasses, *inter alia*, conduct evincing a lack of honesty, probity or integrity of principle; [a] lack of fairness and straightforwardness. . . . Thus, what may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty." *Attorney Grievance Comm'n of Maryland v. Thomas*, 440 Md. 523, 555, 103 A.3d 629 (2014) (internal quotation marks omitted) (alteration in original).

17

"conscious objective or purpose" to conceal information from her client and Bar Counsel); *Attorney Grievance Comm'n v. Calhoun*, 391 Md. 532, 566, 894 A.2d 518 (2006) (respondent violated MLRPC 8.4(c) by "deceitful and misleading" conduct when she received a check for full settlement of client's case, deposited the check into her own bank account, and did not inform her client for more than a year of the receipt of the funds); *Attorney Grievance Comm'n v. Ellison,* 384 Md. 688, 715, 867 A.2d 259 (2005) (respondent violated MLRPC 8.4(c) when he acted with "conscious objective or purpose" in concealing fact of ongoing representation of a client).

The hearing judge did not analyze the application of MLRPC 8.4(c) separately from MLRPC 8.2(a). We agree that, in this context, the two rules should be considered in concert. The hearing judge did not find – and the Commission no longer argues – that the statement in question constituted a knowing falsehood. Nor is there evidence of an omission or misrepresentation with a "conscious objective or purpose" to conceal truthful information. There is not clear and convincing evidence of a violation of MLRPC 8.4(c).

## C. *MLRPC 8.4(d)*

MLRPC 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct negatively impacts the public's perception of the legal profession." *Attorney Grievance Comm'n v. Basinger*, 441 Md. 703, 712, 109 A.3d 1165 (2015) (quoting *Attorney Grievance Comm'n v. McDowell*, 439 Md. 26, 39, 93 A.3d 711 (2014)). "The prejudice to the administration

18

of justice may also be measured by the practical implications the attorney's conduct has on the day-to-day operation of our court system." *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163 118 A.3d 958 (2015) (quoting *Attorney Grievance Comm'n v. Smith*, 442 Md. 14, 31, 109 A.3d 1184, 1194 (2015)). Whether there has been a negative impact is judged by an objective standard. *Basinger*, 441 Md. at 716.

Here, Mr. Stanalonis, a candidate for judicial office, made a statement in a campaign flyer about the views of his opponent, Judge Densford. The hearing judge concluded that the statement reflected negatively on the legal profession because the Stanalonis campaign made it without "conducting a full and thorough investigation" into its accuracy. Nevertheless, Mr. Stanalonis had a "demonstrable basis" for believing the statement and, according to his own testimony (which the hearing judge credited), did believe it. It is hard to imagine that making such a statement would negatively impact that public's perception of the legal profession, except insofar as any campaign material that slights the qualifications of an opponent has a negative impact on the public perception of the opponent who, as in this case, is an attorney who holds public office.[15] But such a standard would be incompatible with the State's current policy, incorporated in the State Constitution, of holding contested elections

---

[15] One might therefore read MLRPC 8.4(d) to prohibit all campaign material on behalf of a lawyer that negatively portrays an opponent in an election, because all such material might negatively impact the public's perception of the legal profession. However, such an interpretation would raise a serious First Amendment question, and, in light of the canon of constitutional avoidance, we decline to interpret it in this way.

for circuit court judgeships and public legal officers such as the Attorney General and State's Attorneys. Accordingly, there was no violation of MLRPC 8.4(d).

## Disposition

For the reasons set forth above, the Petition for Disciplinary or Remedial Action is dismissed.

Although we have concluded that there is insufficient evidence to establish a violation of the MLRPC, our disposition of this case should not be taken to endorse the use of (in Judge Densford's words) "antics and semantics" in contested judicial elections. Every Maryland attorney takes an oath to act "fairly and honorably."[16] Those who seek judicial office must resist the temptation to advance at the risk of violating that pledge.

IT IS SO ORDERED. PETITIONER SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THE COURT, INCLUDING THE COST OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH JUDGMENT IS ENTERED IN FAVOR OF JOSEPH MICHAEL STANALONIS AGAINST THE ATTORNEY GRIEVANCE COMMISSION.

---

[16] Maryland Code, Business Occupations & Professions Article, §10-212.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 74

September Term, 2013

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JOSEPH M. STANALONIS

_____

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Jr., Glenn T. (Retired,
Specially Assigned),

JJ.

_____

Concurring and Dissenting Opinion by Watts, J.

_____

Filed: November 23, 2015

Respectfully, I concur in part and dissent in part. I would hold that Joseph M. Stanalonis ("Stanalonis"), Respondent, violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 8.2(a) (Judicial and Legal Officials) and MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice).[1] Accordingly, I would reprimand Stanalonis.

I disagree with the Majority's determination that clear and convincing evidence did not support the hearing judge's conclusion that Stanalonis violated the MLRPC. See Maj. Slip Op. at 16, 19-20. Plainly put, clear and convincing evidence supports the hearing judge's conclusion that Stanalonis violated MLRPC 8.2(a) and 8.4(d). MLRPC 8.2(a) provides:

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.

Recently, in Attorney Grievance Comm'n v. Frost, 437 Md. 245, 262-63, 85 A.3d 264, 274 (2014), this Court explained MLRPC 8.2(a) in greater detail, stating:

> The Preamble to the Maryland Lawyers' Rules of Professional Conduct provides that "[6] . . . a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority." In other words, "[m]embers of the legal profession have a responsibility to refrain from engaging in conduct prejudicial to the administration of justice." *Attorney*

---

[1] I agree with the Majority that clear and convincing evidence did not support the hearing judge's conclusion that Stanalonis violated MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation). See Maj. Slip Op. at 16-18. The hearing judge gave no separate analysis that warranted finding Stanalonis violated MLRPC 8.4(c) independent of MLRPC 8.2(a). Absent any analysis of why a reckless disregard for the truth constitutes a violation of MLRPC 8.4(c), I concur with the Majority on this point.

*Grievance Comm'n v. DeMaio*, 379 Md. 571, 581, 842 A.2d 802, 808 (2004). [MLRPC] 8.2(a) furthers this principle by requiring lawyers to refrain from impugning the qualifications or fitness of judicial and public legal officers. As Comment [1] to MLRPC 8.2(a) clarifies, "[e]xpressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice." *See also In re Simon*, 913 So. 2d 816, 824 (La. 2005) ("While a lawyer[,] as a citizen[,] has a right to criticize [judges, judicial officers or public legal officers] publicly, he [or she] should be certain of the merit of his [or her] complaint, use appropriate language, and avoid petty criticisms, for unrestrained and intemperate statements tend to lessen public confidence in our legal system."). In other words, the purpose of [MLRPC] 8.2(a) is not to protect judges, judicial officers, or public legal officials from unkind or undeserved criticisms. Rather, [MLRPC] 8.2(a) protects the integrity of the judicial system, and the public's confidence therein, and it does so in a limited way. Statements in violation of [MLRPC] 8.2(a) must (1) be false, (2) impugn the integrity or qualifications of judges, judicial officers or public legal officers, and (3) be made by the attorney knowing them to be false or with reckless disregard for their truth or falsity.

(Ellipsis and some alterations in original) (footnote omitted).

MLRPC 8.4(d) provides: "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct negatively impacts the public's perception of the legal profession." Attorney Grievance Comm'n v. McDowell, 439 Md. 26, 39, 93 A.3d 711, 719 (2014) (citation, ellipses, and internal quotation marks omitted). Stated otherwise, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct "tends to bring the legal profession into disrepute." Attorney Grievance Comm'n v. Reno, 436 Md. 504, 511, 83 A.3d 781, 785 (2014) (citation and internal quotation marks omitted). In Attorney Grievance Comm'n v. Marcalus, 442 Md. 197, 205, 112 A.3d 375, 379 (2015), we further explained:

In determining whether a lawyer violated MLRPC 8.4(d) by engaging in conduct that negatively impacted the public's perception of the legal profession, this Court applies the objective standard of whether the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public . . . , not the subjective standard of whether the lawyer's conduct actually impacted the public and/or a particular person (*e.g.*, a complainant) who is involved with the attorney discipline proceeding.

(Citations, internal quotation marks, and brackets omitted) (ellipsis in original).

Here, Stanalonis, while running for Judge of the Circuit Court for Saint Mary's County, disseminated campaign flyers that stated that his opponent, Judge David W. Densford ("Judge Densford"), among other things, "[o]pposes registration of convicted sexual predators." At the disciplinary hearing, Stanalonis testified that he based the assertion that Judge Densford "[o]pposes registration of convicted sexual predators" on: (1) his personal knowledge that Judge Densford, while serving as a defense lawyer, routinely opposed the registration of his clients in the Maryland Sex Offender Registry; and (2) his conversations with other prosecutors in the St. Mary's County Office of the State's Attorney. Judge Densford testified that he could not recall ever expressing opposition to the registration of convicted sexual offenders in general, but stated that, as a defense lawyer, he did attempt to avoid the registration of his clients in particular, explaining: "[W]hat I had opposed is my clients pleading to things that would get them registered as sexual offenders, if I could keep that from happening."

The hearing judge found that Stanalonis "had a demonstrable basis for believing that [Judge] Densford opposed the Sex Offender Registry." Nonetheless, the hearing judge also found that the only measure Stanalonis took to verify the truth of the assertion was to "s[eek] input" from his campaign volunteers, who did not dispute the veracity of the

- 3 -

assertion. The hearing judge concluded that Stanalonis "was obligated to make a more substantial effort in ensuring the accuracy of the proffered statement, and he failed to do so." As such, the hearing judge determined that Stanalonis "acted with reckless disregard to the truth of the statement that Judge Densford 'Opposes the registration of convicted sexual predators.'"

Under these circumstances, I would agree with the hearing judge that Stanalonis violated MLRPC 8.2(a). As Judge Densford's testimony demonstrated, while representing individual criminal defendants, Judge Densford attempted to prevent his clients from pleading guilty to crimes that would result in registration as sex offenders; there is no evidence that Judge Densford expressed publicly or privately a general opposition to the registration of convicted sex offenders. Having a demonstrable basis for holding a particular belief is not the same as knowing that the belief is true or accurate. For example, I may believe that Christmas will be on a Saturday in 2016 because it is on a Friday in 2015. I have a demonstrable basis for my belief, but my belief is inaccurate. Checking the calendar would advise that Christmas will be on a Sunday in 2016 because 2016 is a leap year. Having a demonstrable basis for believing something does not give a lawyer license to publish such information as though it were accurate or fact. In making the statement on campaign flyers that Judge Densford "[o]pposes registration of convicted sexual predators[,]" Stanalonis acted with reckless disregard for the statement's truth or accuracy. Indeed, Stanalonis knew only that, as a defense lawyer, Judge Densford had attempted to have his clients not be required to register as sex offenders. And, as such, Judge Densford was acting in his capacity as an attorney pursuing his clients' interests. Stanalonis's

- 4 -

statement that Judge Densford "[o]pposes registration of convicted sexual predators" impugned the integrity and qualifications of Judge Densford and was made with reckless disregard for its truth or falsity. This was all that was needed to support the hearing judge's conclusion that Stanalonis violated MLRPC 8.2(a).

I would also agree with the hearing judge that Stanalonis violated MLRPC 8.4(d) by disseminating campaign flyers stating that Judge Densford "[o]pposes registration of convicted sexual predators." Although Stanalonis did not make the statement with actual knowledge its inaccuracy, he acted with a reckless disregard as to the statement's truth or falsity, and failed to undertake meaningful efforts to ensure that the statement was accurate. Indeed, other than his personal observations of Judge Densford when Judge Densford was a defense lawyer and some discussions with prosecutors in the St. Mary's County Office of the State's Attorney, the only measure that Stanalonis took to test the veracity of his theory was to "s[eek] input" from his campaign volunteers, none of whom apparently contradicted him. Even viewing it in the most favorable light to Stanalonis, the statement did not accurately describe what Judge Densford did when he was a defense lawyer.

Such conduct "would negatively impact the perception of the legal profession of a reasonable member of the public[.]" Marcalus, 442 Md. at 206, 112 A.3d at 380 (citation and internal quotation marks omitted). Indeed, no reasonable member of the public would expect a lawyer to make an inflammatory statement on campaign flyers concerning a sitting Judge's opinion of the Maryland Sex Offender Registry with a reckless disregard for the truth and without taking measures to ensure the statement was accurate in the first instance. Such a cavalier attitude toward the truth "reinforces the most damaging cynicisms

- 5 -

concerning lawyers' honesty, avarice, and candor." Attorney Grievance Comm'n v. Levin, 438 Md. 211, 228, 91 A.3d 1101, 1111 (2014).

Based on Stanalonis's violations of MLRPC 8.2(a) and 8.4(d), in accord with the Commission's recommendation, I would reprimand Stanalonis. Cf. Attorney Grievance Comm'n v. Basinger, 441 Md. 703, 721-22, 109 A.3d 1165, 1176 (2015) (This Court reprimanded a lawyer who violated MLRPC 8.4(d) by mailing to a client letters in which he called the client, among other things, "A TRUE C[**]T[.]"); Attorney Grievance Comm'n v. Mahone, 398 Md. 257, 268-69, 920 A.2d 458, 464-65 (2007) (This Court reprimanded a lawyer who violated MLRPC 8.4(d) by, among other things "disrupting the court proceedings and . . . walking out while the trial judge rendered his oral opinion from the bench[.]"); Attorney Grievance Comm'n v. Gansler, 377 Md. 656, 701-02, 693, 835 A.2d 548, 574-75, 569 (2003) (This Court reprimanded a lawyer who violated MLRPC 3.6(a) (Trial Publicity) by making extrajudicial statements about a defendant's confession, discussing a plea offer made to another defendant, and providing his opinion as to the guilt of two defendants.).

For the above reasons, respectfully, I concur in part and dissent in part.

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 74

SEPTEMBER TERM, 2013

---

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JOSEPH M. STANALONIS

---

Barbera, C.J.,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Harrell, Glenn T., Jr. (Retired, Specially
Assigned),
JJ.

---

Dissenting Opinion by Harrell, J.

---

Filed: November 23, 2015

I dissent.

My views regarding the appropriate disposition of this case are informed by the aphorism "Judicial Elections Are Different."[1] Contested circuit court judgeship elections are different than other types of contested elections for public office because special rules and processes distinguish them as a category apart. They should be treated and seen as different also because of the unique nature of the office being sought. In addition to complying with State election laws generally, judges' political activities are regulated by Rule 4.1 through 4.6 of the Maryland Code of Judicial Conduct (Md. Rule 16-813). Attorneys who seek judicial office are regulated by Rule 8.2 of the Maryland Lawyers Rules of Professional Conduct (MLRPC) (Md. Rule 16-814). These regulations aim to protect the integrity of judicial office and the legal profession. The Maryland Judicial Campaign Conduct Committee (MJCCC) was formed to focus attention on and foster integrity and civility in this specific genre of the Maryland judicial election process. It was the MJCCC (having received a complaint from an attorney) that highlighted for the

---

[1] This is also the title of a pamphlet published by the Maryland Judicial Campaign Conduct Committee (MJCCC), an organization created in 2005, at the behest of former Chief Judge Robert M. Bell of this Court and the Judicial Ethics and Public Trust and Confidence Committees of the Maryland Judicial Conference. The MJCCC was formed to foster integrity and civility in contested elections for Maryland circuit court judgeships.

Attorney Grievance Commission the problematic conduct of Stanalonis that resulted in the charges brought in the present case.[2]

No such inhibitions regulate or seek to influence the contestants or the contests for other elective offices. Thus, contested judicial elections in Maryland are different from other electoral contests.

---

[2] The MJCCC website, explaining the organization's "Statement of Purpose," characterizes why it seeks to uphold dignity in the conduct of contested judicial elections for circuit court judgeships:

> The frankly partisan, occasionally bare knuckles, conduct that we have come to tolerate in campaigns for legislative and executive office are inconsistent with the dignity we rightly count on in those who hold judicial office. The exaggerated rhetoric often employed in contemporary discussions of political issues, when used in the context of judicial elections, is corrosive of the public's perception of the integrity of the court system. Such campaign tactics damage the integrity of the judiciary -- regardless of whether the communication falls within the ambit of constitutionally protected speech.

> Maintaining the dignity of the judiciary is necessary to protect the rule of law --- a root principle of our social compact and the one sure standard upon which this diverse and frequently fractious nation believes it can rely. The rule of law promises justice, neutrality and fairness. It does not exaggerate to say that the concept has an iconic status and that faith in the rule of law is akin to a civil religion. Judges are symbols of the rule of law. Therefore, those who aspire to judicial office have a special responsibility -- a duty in fact-- to conduct themselves in their campaigns with a dignity that reflects and honors the public's reverence for the unique office they seek.

Candidates for circuit court judgeships in an election are offered the opportunity by the MJCCC to pledge publicly to conduct themselves and their campaigns in accordance with the hortatory standards published by the MJCCC. Stanalonis chose not to make this pledge. Of course, that fact alone does not bear directly on the outcome of this case, but it gains prescience in hindsight.

As the Majority opinion appears to concede, the present case, as it reaches us, distills to the single question of "whether the statement in Mr. Stanalonis' campaign flyer [that Judge Densford, as a judge, '[o]pposes registration of convicted sexual predators'] was made . . . with reckless disregard as to its truth or falsity." Maj. slip op at 8 (footnote omitted). The hearing judge concluded that Stanalonis violated the Maryland Lawyers' Rule of Professional Conduct (MLRPC) 8.2(a) and MLRPC 8.4(c) and (d) by including that statement in his flyer. I stand with her.

So as not to risk paraphrasing or summarizing inaccurately or incompletely the evidence weighed by the hearing judge and the conclusions she reached from that evidence (after assessing the relative credibility of the two main antagonists here), I recount what she stated relevantly in her findings of fact and conclusions of law:

FINDINGS OF FACT
* * *

Respondent Stanalonis and several other Assistant State's Attorneys in St. Mary's County prosecuted cases involving sex offenses wherein attorney Densford served as private counsel. Based on his experience and that of other prosecutors in the St. Mary's County Office of the State's Attorney, Respondent testified that attorney Densford routinely opposed the registration of his clients on the sex offender registry. In reliance, on conversations surrounding the issue and interactions with fellow prosecutors, he determined that Densford opposed the registry.

Judge Densford's testimony with respect to the registration of convicted sexual predators is as follows:

DIRECT
Q: At any time prior to your appointment on December 22, 2011 in your capacity as a private person or as a criminal defense attorney, did you express opposition to the registration of convicted sexual predators?
A: No. Not as a group. I did when I represented individuals. I didn't want particular people to have to register and would negotiate

3

that. That had nothing to do with the offender registry. It had to do with representation.

Q: At any time prior to your appointment on December 22, 2011 in your capacity as a private person or as a criminal defense attorney, did you express opposition to the registration of convicted sexual offenders?

A: No

CROSS EXAMINATION

Q: So, you put in as an election issue, your experience of 27 years in private practice, correct?

A: I did.

. . .

Q: No. My question is, as a criminal defense practitioner, during that 27 years, you, in fact, had opposed the registration of convicted sexual predators, correct?

A: No, that is not true. And what I had opposed is my clients pleading to things that would get them registered as sexual offenders, if I could keep that from happening.

Q: All right. So your position during the 27 years as a criminal defense practitioner, you would oppose your clients being convicted of a crime that would require them to be registered as a convicted sexual predator, correct?

A: If I could get them a plea to assault instead of something that put them on the registry, particularly since Mr. Stanalonis and I had a 16 year-old facing charges, yes, I tried to avoid that. Yes, I did.

. . .

Q: Okay. And you would from time to time tell people privately in conversations that as a criminal defense practitioner [you were] opposed to registration of convicted sexual predators, correct?

A: No.

Q: No? You never said that in private conversation?

A: That's been alleged by the State's Attorney's Office. It is false.

Q: Okay. So, just so I'm clear, your testimony is that in private conversations while a criminal defense practitioner, you have never said in a private conversation over dinner or elsewhere, that you would oppose the registration of convicted sexual predators.

A: I don't believe I've ever made that blanket statement to anybody privately or publicly.

(Internal citations omitted).

CONCLUSIONS OF LAW
* * *
[as to the relevant flyer statement and related testimony]

Respondent's testimony, which this court finds credible, revealed that he as well as other Assistant State's Attorneys in St. Mary's County prosecuted several cases involving sex offenses, wherein attorney David Densford served as defense counsel. Respondent testified that he knew from his own experience and the experiences of other prosecutors in St. Mary's County, that attorney David Densford would routinely oppose the registration of his clients on the sex offender registry.

At his deposition, Judge Densford testified that he opposed his "clients pleading to things that would get them registered as sexual offenders, if [he] could keep that from happening." He denied, however, making any such statements as a member of the judiciary, and further stated, that he never had any conversations concerning the Sex Offender Registry with Respondent outside of the context of the representation of a client.

This court finds the testimony of both Judge Densford and Respondent equally compelling. Because of Densford's history as a defense attorney and discussions with several Assistant State's Attorneys, Respondent had a demonstrable basis for believing that Densford opposed the Sex Offender Registry. Additionally, he sought input on the issue from his campaign volunteers and no one disputed the veracity of this assertion. However, this court finds that Respondent was obligated to make a more substantial effort in ensuring the accuracy of the proffered statement, and he failed to do so.

As a result, Respondent acted with reckless disregard as to the truth of the statement that Judge Densford "Opposed registration of convicted sexual predators." Judge Densford never made any public statement regarding the sex offender registry, and Respondent took no measures outside of those outlined above to ensure the truth of his assertion. Additionally, Respondent's justification presupposes that Judge Densford personally shared and upheld the values and opinions of the individuals he represented. Respondent's statement violated Rule 8.2(a), and 8.4(c).

5

Petitioner also contends that Respondent's statement that Judge Densford "Opposes registration of convicted sexual predators" violated Rule 8.4(d). Specifically, Petitioner argues that Respondent's conduct was prejudicial to the administration of justice. This Court agrees. The actions of Respondent were reckless and had the effect of undermining public confidence in the administration of justice. Conduct that reflects negatively on the legal profession and sets a bad example for the public at large is prejudicial to the administration of justice. *Attorney Grievance Commission v. Brady*, 422 Md. 441 (2011) (citing *Attorney Grievance Commission v. Goff*, 399 Md. 1 (2007). Respondent failed to make a substantial effort to ensure that the statement was accurate. Thus, in making the statement that Judge Densford "opposes registration of convicted sexual predators" Respondent sent a message to the public that it is acceptable to make representations regarding the identity or opinions of a public official, specially a judge, without first conducting a full and thorough investigation into the accuracy of the assertion.

In sum, Petitioner has established, by clear and convincing evidence, that Respondent violated Rule 8.2(a), 8.4(c) and 8.4(d) of the Maryland Lawyers' Rules of Professional Conduct.

The Majority opinion sets-up principally its ultimate toleration of Stanalonis' mis-representation of the view attributed to Judge Densford, as a sitting judge, as protected speech and/or merely imprecise language chosen during the "heat" of nothing more than a generic political campaign. Maj. slip op. at 9-11. The Majority's setting of this scenic backdrop does not convince me to buy-in to its analysis that followed. Wishful thinking and recklessness should not be protected. Contested judicial elections are not merely generic political campaigns.[3]

---

[3] The Majority seems to want to "try" Judge Densford in absentia in this case through its digressions into examples of his reputed campaign statements about Stanalonis, which the Majority implies to have been less-than-praiseworthy. If the Majority is invoking either the principle that "two wrongs cancel out each other" or the doctrine of invited error, it wanders off the path charted for us.

The "reckless disregard" standard of the MLRPC should be assessed under an objective standard (*see* Maj. slip op. at 12-13). This analytical tool is better suited to policing judicial electoral campaign conduct because it allows for closer regulation of any tendencies on the part of candidates to do or say whatever is in their best interest, especially as they are likely to handicap favorably their ability to get away with it. A subjective standard merely plays into the hands of candidates who want to take advantage of the shadowy margins. I am persuaded that an objective standard is the safer fork in the road to take also because I agree with the goals of the MJCCC and the Maryland Rules as regards conduct in contested judicial elections.

The Majority opinion is mistaken entirely in its apparent assumption that Judge Shaw Geter "generally credited" (Maj. slip op. at 15) Stanalonis' determination that Judge Densford "opposed the registry." *Id.* Rather, by finding credible Judge Densford's testimony that he, while an attorney in private practice and as a sitting judge, did not make any sweeping or generic statement of opposition to the sex offender registry statutory scheme, Judge Shaw Geter rejected Stanalonis' self-serving bid to establish a springboard from attorney Densford's client advocacy to Stanalonis' patently wrong attribution to Judge Densford of what Stanalonis may have believed he had a "demonstrable basis" to think attorney Densford's view may have been. I see a wide gap between holding a candidate for judicial office to a standard of "absolute precision in the expression of political speech as part of an election campaign" (*id.*) and gross carelessness in injecting into the public debate (where little practical or timely opportunity to defend against it existed) a claim for which a reasonable promoter of the

7

claim had no legitimate basis to publish it, but rather a duty to inquire further or verify before leaping to a self-serving and logically faulty premise. Stanalonis, eschewing further inquiry or verification, tailored to his ends, at best, an impermissible and unsupported leap of logic to infer from attorney Densford's advocacy of his clients' best interest to a generic and false view of opposition to the statutory scheme held by Densford as a judge. He cared little apparently for whether his starting-point statement was true, accurate, or taken out-of-context, standing pat on the claim that apparently none of his State's Attorney colleagues spoke up against his unsubstantiated extrapolation from a false starting-point. Stanalonis' conduct was a gross departure from what a reasonably prudent lawyer challenging a sitting judge should have done and a gross deviation from the kind of conduct we should expect from any candidate for judicial office. Toleration of such shenanigans in general electoral campaigns is one thing, but is not acceptable here. The Majority opinion's forgiving attitude toward Stanalonis' misconduct will reap the whirlwind in future contested circuit court elections.

I would overrule Respondent's exceptions and accept Bar Counsel's sanction recommendation of a reprimand, in view of the mitigating circumstances found by the hearing judge.