*Attorney Grievance Commission of Maryland v. Christopher Edward Vasiliades,* Misc. Docket AG No. 10, September Term, 2020. Opinion by Hotten, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT.** Disbarment is the appropriate sanction for an attorney who violated Maryland Attorneys' Rules of Professional Conduct 19-308.1(b), 19-308.4(a), (b), (c), (d), and (e). Respondent's conduct included intentional dishonesty during the bar admission process; criminal infractions and violation of protective orders that were not reported to the Attorney Grievance Commission; and disturbing content reflected in social media accounts linked to his professional profile.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 10

September Term, 2020

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

CHRISTOPHER EDWARD
VASILIADES

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: August 16, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The Attorney Grievance Commission of Maryland, acting through Bar Counsel ("Petitioner"), directed that charges be filed against Christopher Edward Vasiliades ("Respondent"), pursuant to Md. Rule 19-721.[1] The charges stemmed from Respondent's responses and omissions during the process of his admission to the Maryland Bar, as well as personal misconduct arising thereafter.

On April 7, 2020, Petitioner filed a Petition for Disciplinary or Remedial Action against Respondent. By order dated April 17, 2020, pursuant to Md. Rule 19-722(a),[2] we assigned the matter to the Honorable Colleen A. Cavanaugh ("hearing judge") of the Circuit Court for Baltimore County, to conduct a hearing and render findings of fact and conclusions of law.[3] The hearing judge conducted a hearing on October 26 and 27, 2020 and entered her findings of fact and conclusions of law on December 16, 2020.

Upon consideration of the evidence presented, the hearing judge found, by clear and convincing evidence, that Respondent violated Maryland Attorneys' Rules of Professional

---

[1] Maryland Rule 19-721(a)(1) provides, in pertinent part: "Upon approval or direction of the Commission, Bar Counsel, on behalf of the Commission, shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

[2] Maryland Rule 19-722(a) provides, in pertinent part: "Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating (1) a judge of any circuit court to hear the action, and (2) the clerk responsible for maintaining the record."

[3] Initially, on April 14, 2020, we issued an order transmitting this matter to the Honorable C. Carey Deeley, Jr. for a hearing, but in light of a conflict of interest, we reassigned the matter to Judge Cavanaugh.

Conduct ("MARPC")[4] 19-308.1(b) (Bar Admission and Disciplinary Matters), and 19-308.4(a), (b), (c), (d), and (e) (Misconduct). The hearing judge also found certain aggravating and mitigating factors. On January 12, 2021, Respondent filed exceptions to the hearing judge's findings of fact and conclusions of law.

For the reasons expressed below, we disbar Respondent from the practice of law in this state.

### THE HEARING JUDGE'S FINDINGS OF FACT

We republish the relevant portions of the hearing judge's findings of fact below. *See, e.g.*, *Attorney Grievance Comm'n v. Keating*, 471 Md. 614, 622, 243 A.3d 520, 525 (2020); *Attorney Grievance Comm'n v. Gracey*, 448 Md. 1, 9, 136 A.3d 798, 803 (2016).

### Background

From 2012 to 2016, the Respondent attended the University of Maryland Francis King Carey School of Law as an evening student. The Respondent worked for Paul J. Duffy, Esquire as a law clerk from April 2013 through December 2016. The Respondent was admitted to the Bar of Maryland on December 14, 2016. Since 2018, he has maintained a solo law practice in Baltimore County focused on criminal defense.

### Admission to the Bar of Maryland

On March 23, 2016, the Respondent submitted his Application for Admission to the Bar of Maryland ("Bar Application") to the State Board of Law Examiners ("SBLE"). The Bar Application stated, in part: "I do solemnly declare and affirm under penalties of perjury that the contents of the foregoing petition are true and correct[,]" and was signed by the Respondent on March 23, 2016. Part II of the Bar Application, the Character Questionnaire, contained 20 questions, some with subparts. The Character Questionnaire required the disclosure of information related to the

---

[4] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified in Title 19 of the Maryland Rules, without substantive change.

Respondent's character and fitness to practice law including, but not limited to, information regarding education, employment, contacts with the legal system, financial obligations, and any conditions and/or impairments that could affect the practice of law.

Question 15(a)(i) of the Character Questionnaire states:

> Do you have any condition or impairment (such as substance abuse, alcohol abuse, or a mental, emotional, nervous, or behavioral disorder or condition) that in any way currently affects, or, if untreated or not otherwise actively managed, could affect your ability to practice law in a competent and professional manner? In this question "currently" means recently enough that the condition could reasonably have an impact on your ability to function as a lawyer. "Actively managed" means that you receive the appropriate therapy, participate in supervised monitoring and/or recognized peer support program, or utilize other appropriate support systems to cope with your condition or impairment.

The next question, Question 15(a)(ii), states:

> If your answer to (a)(i) of this question is "yes", are the limitations caused by your disorder, condition, or substance abuse problem reduced or ameliorated because you receive ongoing therapy or treatment (with or without medication) or because you participate in a monitoring program or another support system (including A.A., N.A., etc.)? If you answer "Yes" explain briefly describing any treatment or therapy you received in the past year or receive now[.]

The Respondent answered "No" to Questions 15(a)(i) and 15(a)(ii).

Question 20 on the Bar Application is titled "Affirmation of Applicant's Duty of Full, Candid Disclosure and Applicant's Continuing Duty to Submit Written Notice of Changes to Information Sought by the Application" ("Affirmation of Continuing Duty to Disclose") and states, in part:

> I understand that the required disclosures in this questionnaire are of a continuing nature. I hereby acknowledge my duty to respond fully and candidly to each question or required disclosure and to ensure that my responses are accurate and current at all times until I am formally admitted to the bar of

3

the State of Maryland. I will advise the Board immediately and in writing of any changes in the information disclosed in or sought by this questionnaire, including any pertinent facts developed after the initial filing of this application and the facts of any incident occurring subsequent to the initial filing of this application.

The Respondent signed the Affirmation of Continuing Duty to Disclose on January 13, 2016. The Respondent submitted his Bar Application on March 23, 2016. On May 11, 2016, the Respondent supplemented his Bar Application to include information responsive to Question 8.[5] The Respondent also supplemented his response to Question 12[6] when he received a traffic citation after submitting his Bar Application online. The Court [found] that the Respondent was aware of his continuing duty to update the information disclosed on his Bar Application after its submission.

After the Respondent submitted his Bar Application, he, like all applicants, was required to be interviewed by an Investigator with the Character Committee of the SBLE. In June 2016, Augustus F. Brown, Chair of the Second Circuit of the Character Committee, assigned the Honorable C. Carey Deeley, Jr.[7] as the Character Committee Investigator for the Respondent. [Mr.] Deeley's role was to investigate the Respondent's character and fitness

---

[5] Question 8 states:

Have you ever resigned from or been charged, reprimanded or otherwise disciplined by any school, college, or university, or by any trade or professional organization, at any time for any reason? If so, identify the institution or organization, state the cause, circumstances, date and outcome of each such occurrence. Do so by attachment to this Application.

[6] Question 12 states, in relevant part:

(a) The following is a complete record of all criminal proceedings (including traffic citations, arrests, summonses) to which I am or have ever been a party. I have listed here all motor vehicle citations for moving violations (including all speeding citations) and excluded only occasional parking violations.

[7] All of the Respondent's relevant interactions with Judge Deeley took place prior to his [appointment] to the bench on December 15, 2016. [We will refer to him as Mr. Deeley during the period of his communications with Respondent.]

4

to practice law and make a recommendation as to whether the Respondent should be admitted to the Maryland Bar. In June 2016, Mr. Brown forwarded to [Mr.] Deeley a Memorandum from the SBLE which noted specific issues to investigate related to the Respondent. The issues to be investigated included 1) an incident involving the Respondent urinating in public; 2) numerous criminal/traffic proceedings in which the Respondent was involved; and 3) a surety bond.

Upon receiving the SBLE Memorandum, [Mr.] Deeley reviewed the Respondent's Bar Application and contacted the Respondent to gather additional information. The numerous criminal and traffic proceedings referenced in the SBLE Memorandum referred to the Respondent's response to Question 12(a). The incidents disclosed were as follows:

1. Alcohol Beverage Open Container in Public – 2007
2. Disorderly Conduct, Failure to Obey Lawful Order – 2007
3. Possession of Alcohol Under Age 21 – 2007
4. Driving Vehicle While Under the Influence of Alcohol – 2007
5. Urinating in Public – 2010
6. Driving Vehicle While Impaired by Alcohol – 2011
7. Driving While License Suspended/Revoked – 2011
8. Second Degree Assault – 2014
9. Driver Using Handheld Device While Vehicle in Motion – 2014
10. Driver Using Handheld Device While Vehicle in Motion – 2015
11. Driver Failure to Obey Properly placed Traffic Control Device - 2016

Due to the Respondent's lengthy criminal and traffic history, [Mr.] Deeley and the Respondent met six times over the course of three months. [Mr.] Deeley was concerned that the Respondent had a problem with alcohol as more than half of the criminal and traffic proceedings disclosed on his Bar Application involved alcohol use. [Mr.] Deeley testified that it was his practice to inquire as to an applicant's character, which included determining whether an applicant had past or current alcohol and/or drug abuse issues. [Mr.] Deeley further testified that he reviewed his file on the Respondent prior to trial and from that review, "it's clear that we discussed drugs and alcohol." The Respondent admits that he and [Mr.] Deeley discussed his prior and current habits with alcohol and his prior behavior and decision-making.

5

On November 21, 2016, [Mr.] Deeley submitted his recommendation to Mr. Brown and the Character Committee. [Mr.] Deeley wrote, in part: "I don't believe [the Respondent] has a substance abuse problem at present; he credibly reports minimally using alcohol." In the letter, [Mr.] Deeley recommended that the Respondent be admitted to the Bar because he believed that the Respondent had been honest with him and had taken responsibility for his poor judgment during his "growing up years."

After receiving [Mr.] Deeley's recommendation, Mr. Brown requested that [Mr.] Deeley explain in greater detail his reasons for recommending the Respondent for admission to the Bar. Thereafter, [Mr.] Deeley sent the Respondent to be evaluated by James Quinn, then-Director of the Lawyers Assistance Program of the Maryland State Bar Association. On December 1, 2016, Mr. Quinn wrote to [Mr.] Deeley and stated, in part:

> [The Respondent] made full disclosure to me of all issues and problems, *including his substance abuse history and treatment.* I found that [the Respondent] accepts responsibility for his past negative behavior and poor judgment. [The Respondent] has matured. . . [.] Today, [the Respondent] is implementing positive coping skills and is using sound judgment. [The Respondent] has completed alcohol education/treatment programs in the past and I do not find it necessary to recommend treatment at this time. ([E]mphasis added).

Mr. Quinn believed that the Respondent had fully disclosed his substance abuse history and treatment during their meeting. Relying upon this belief, Mr. Quinn wrote to [Mr.] Deeley and concluded, in his professional opinion, that the Respondent's "conduct, general moral character and standards are very good."

Relying upon Mr. Quinn's "favorable report," [Mr.] Deeley wrote Mr. Brown a more detailed explanation for why he believed the Respondent should be admitted to the Bar. [Mr.] Deeley stated, in part:

> Admittedly, when I first received [the Respondent's] materials, I was less than impressed. He has more contacts with the court system than anyone I have previously interviewed. His description of his prior twists and turns is less than clear. And, frankly, I worried that [the Respondent] may have an alcohol problem.

For that reason, I did what I have done with others similarly situated. I met with him multiple times in an effort to make an informed judgment, over time, on whether to recommend him, based not only on the paperwork, but also on personal contact.[]

Since 2011, [the Respondent] has progressed. He no longer appears to abuse alcohol (or drugs—his alcohol assessment for one of the DWIs makes mention of prior cannabis use, which [the Respondent] explained as having experimented in high school and occasional use in college).[]

He showed up on time, every time I asked him to come in. He never evidenced frustration at the repeated requests to return. He worked hard to produce a readable, in-depth summary of his prior indiscretions.

[Mr.] Deeley recommended that the Respondent be admitted to the Bar because he believed the Respondent had been honest during their six meetings. On December 14, 2016, the Respondent was admitted to the Bar.

In his sworn statement to Bar Counsel, Respondent admits that, by his final semester of law school in 2016, he had become addicted to Percocet. At the height of his use, the Respondent was taking up to 90 milligrams of Percocet per day and 30 milligrams of Adderall per day. The Respondent admits that he did not have a prescription for either Percocet or Adderall and that he obtained the substances illegally from an ex-girlfriend. The Respondent attempted to stop taking Percocet on his own, but experienced negative physical symptoms and continued to abuse Percocet until he completed the Bar Examination.

In his sworn statement to Bar Counsel, Respondent testified about his drug use during the Spring and Summer of 2016:

And I think *during that time is when I got addicted. I knew I had a problem.* I was denying it to myself, quite frankly. I was like I don't have a problem, I don't have a problem, I can kick this, I just got to finish. I would always put like a, all right, I'm going to finish it, once I'm done finishing law school, once I'm done with my finals, and then, okay, I'm going to finish it once I'm done doing this. And I always put up these arbitrary timelines. I didn't really, I couldn't because *I was hooked* and

7

I would *start to feel aches, couldn't sleep.* My diet was off. I gained weight. I was gaining a lot of weight during that time.[]

So finally, you know, after the bar, I don't want to jolt anything. I wanted to finish the bar exam, get it out of the way, and then get back, you know, getting help. And then I got help, I went to the doctor . . . . ([E]mphasis added).

In contrast, at that trial of this matter the Respondent maintained that he was *not* using Percocet and Adderall in his final semester of law school; specifically, when he completed his Bar Application. He testified instead that his use of these substances was limited to the one month immediately preceding the Bar exam because the drugs "helped [him] get into the zone."

The Respondent sat for the Bar Examination at the end of July 2016. Shortly thereafter, Respondent stopped taking Adderall and Percocet and suffered from insomnia and other ill effects. Respondent "knew about Suboxone and what it does" so he went to his primary care physician who prescribed daily Suboxone. Since the summer of 2016, the Respondent has been prescribed Suboxone which he currently takes two times per day.

The Respondent admits that he never disclosed to [Mr.] Deeley or Mr. Quinn his prior use of Adderall and Percocet, his addiction to Percocet, or his daily use of Suboxone. The Respondent maintains that he did not disclose his prior substance use and/or addiction because he was never "specifically" asked about it. The Court finds that the Respondent's testimony on this point lacks credibility. [Mr.] Deeley referred the Respondent to Mr. Quinn for the express purpose of a substance abuse evaluation. Although the Respondent may not have appreciated his dependence on Percocet when he completed his Bar Application in early 2016, he certainly understood that he had a recent addiction that required treatment when he met with [Mr.] Deeley and Mr. Quinn.

### J.T.

In June 2017, the Respondent became acquainted with J.T.[8] when she frequented his family's restaurant in Glen Burnie, Maryland. The Respondent later hired J.T. to work in the family restaurant and, in November 2017, the Respondent and J.T. began a romantic relationship. At the time, J.T. was 17 years old and a senior in high school and the Respondent was 29 years old. In December 2018, the romantic relationship ended. On or about

---

[8] J.T. is referred to by her initials out of respect for her privacy.

early January 2019, the Respondent believed that he and J.T. had reconciled their relationship.

On the morning of January 8, 2019, J.T. called the Respondent and told him she was having a panic attack. The Respondent went to pick up J.T. and bring her back to his house. According to the Respondent, J.T. admitted to him that she recently dated a man in exchange for money. The Respondent testified that this upset him and that, throughout the day on January 8, 2019, he and J.T. argued sporadically about their relationship. At some point that day, the Respondent and J.T. met with the Respondent's ex-girlfriend who provided the Respondent with multiple Xanax pills. The Respondent later "took some of the Xanax" because he "was hurting" and "wanted something to numb [the] pain." Around 8:30 P.M., the Respondent began drinking whiskey and, by 10:30 P.M., he was under the influence of alcohol.

Around 10:30 P.M. on January 8, 2019, the Respondent's father, Louis Vasiliades, and his brother, Nicholas Vasiliades, arrived at the house.[9] The Respondent testified that he became upset and angry when he observed J.T. interacting with his family as they all seemed happy to see each other. The Respondent admits that he yelled at J.T., called her a "f[---]ing w[----]" and then squeezed a yogurt on top of her head. J.T. called the police, who subsequently arrived at the house and spoke to those present. The Respondent denied to police that he squeezed yogurt onto J.T.'s head. In his sworn statement to Bar Counsel, Respondent initially admitted that he lied to police, but then clarified that he was never directly asked about pouring yogurt on J.T. so his failure to tell police what happened was not a lie but a failure to elaborate. The police arranged for Louis Vasiliades to drive J.T. home.

On January 9, 2019, J.T. filed criminal charges against the Respondent in the District Court of Maryland for Baltimore County in Case Number 6C470959 ("Assault Case"). That same day, the Respondent was charged with two counts of second-degree assault and one count of fourth-degree sex offense – sexual contact; a warrant for his arrest was issued. The trial in the Assault Case was scheduled for May 1, 2019.

On January 9, 2019, J.T. also petitioned for a temporary protective order against the Respondent in the District Court of Maryland for Anne Arundel County in Case Number D-07-FM-19-807269 ("Protective Order Case"). That day, J.T. appeared before the Honorable Eileen A. Riley who granted

---

[9] During the relevant time period, the Respondent [resided] with his father, brother and, at times, J.T.

the temporary protective order and ordered the Respondent not to "contact, attempt to contact, or harass (in person, by telephone, in writing or by any other means)" J.T. The temporary protective order was in effect until January 17, 2019. On January 10, 2019, the Respondent was arrested (and later released) in the Assault Case. While in custody on January 10, 2019, the Respondent was served with the temporary protective order. The temporary protective order was later extended and remained in effect until February 6, 2019, the date of the final protective order hearing.

On January 23, 2019, the Respondent, in violation of the protective order, sent J.T. an email and a text message. At trial, the Respondent attempted to minimize the violation of the protective order by explaining that the communications were "business related" and somehow justifiable because he had a missed call from J.T.'s number earlier in the day. However, Respondent admits that when he sent the email to J.T. he changed her last name to that of the man that J.T. admitted to dating during their relationship. The [c]ourt rejects the Respondent's explanations and excuses for contacting J.T. and finds that the Respondent knowingly and intentionally violated the temporary protective order on January 23, 2019.

On or about January 29, 2019, the Respondent was charged in the District Court of Maryland for Anne Arundel County in Case Number D-07-CR-19-002186 for violating the temporary protective order on January 23, 2019 ("Violation of Protective Order Case"). Trial in the Violation of Protective Order Case was set for May 9, 2019.

On February 6, 2019, J.T. appeared before the Honorable Thomas V. Miller for the final protective order hearing. The Respondent chose not to appear, and Judge Miller entered a final protective order. The final protective order was to remain in effect until February 6, 2020. The final protective order contained the same "no contact" provisions as the prior, temporary protective orders.

Between February 6, 2019, when the final protective order was entered, and June 13, 2019, when the order was rescinded, the Respondent had multiple contacts with J.T. in violation of the order. In March 2019, J.T. contacted the Respondent to discuss their relationship. The Respondent described the contact as follows:

> She reached out the first time at the end of March to me. She called from a different number basically. And basically, we just, you know, we talked about everything because I guess everything, how it ended was shocking to me. And basically,

10

we talked about everything and then from that point from March until June basically she would call me and text me and stuff and we would talk and then she asked to see me. We did see each other a couple times, too.

In March 2019, the Respondent and J.T. discussed the Assault Case. The Respondent claims that J.T. wanted to "drop the charges" and that he told J.T. that it was her decision whether to appear in court. On May 1, 2019, the Respondent and his counsel appeared for trial in the Assault Case. When J.T. did not appear, the State requested a postponement, which was denied, and the case was dismissed. Later that day, J.T. called the Respondent who informed her that the case was dismissed.

In advance of the May 9, 2019 trial date in the Violation of the Protective Order Case, the Respondent and J.T. discussed that J.T. was not planning to appear for the trial. On May 9, 2019, the Respondent and his counsel appeared for trial in the Violation of the Protective Order Case. When J.T. did not appear, the State dismissed the case. After leaving the courthouse, the Respondent met J.T. at a nearby restaurant for lunch. The Respondent brought with him a blank petition to rescind the final protective order which he helped J.T. complete. When asked how he assisted J.T., the Respondent testified as follows:

> She asked what she should say as the reason for rescinding it and I told her that, you know, basically I said, ["]Because you're not scared of me.["] Basically.

On June 13, 2019, J.T. filed the petition to rescind the final protective order, which was granted.

### Social Media

In 2018, the Respondent opened his law firm, "Vas Law, LLC," in Baltimore County, Maryland. Sometime thereafter, the Respondent created a website for his law firm, "vaslawllc.com," and began to advertise his services.

As of September 2019, the Respondent maintained Twitter and Instagram accounts. As of September 2019, the Respondent's Instagram username was "chris__law__." The Respondent's biography for his Instagram account stated, in part:

**Christopher Vasiliades, Esq.**

Download the Vas Law Accident App. Legal Representation for Auto Accidents. Criminal Defense. Call 1-833-C-LAW-123. DM for advice. Se habla espanol.
**www.vaslawllc.com**

As of September 2019, the Respondent's Twitter username was "@THE_Chris_Law." The Respondent's biography for his Twitter account featured "VASLAW, LLC" in large and bold font and stated, in part:

> **Chris Law**
> @ THE_Chris_Law
> Download the Vas Law Accident App.
> Dauntless legal representation for auto accidents, criminal defense. Call 1-833-C-LAW-123. Baltimore, MD
> vaslawllc.com

As of September 2019, the Respondent's social media accounts contained the following posts and comments:

1. A comment, authored by the Respondent, stating: "@tep_time coming from the fat married n[----] who can't go to a ballgame without his girl's permission"
2. A comment, authored by the Respondent, stating: "Real n[----] s[---]"
3. A post, shared by the Respondent, discussing out-of-wedlock birth statistics. The Respondent commented on the post, "[a]ttention broke b[-----]s. Y'all getting knocked up thinking he'll stick around is literally not working. Here's statistical proof"
4. A post, authored by the Respondent, stating: "B[----]es are so wack. You have to act like you don't give AF about them for them to really like you. You act like you care; they s[---] on you. But then they cry because you don't give them enough attention. They are ALL insecure AF"
5. A post, authored by the Respondent, stating, "[h]umans aren't meant to be happy sweetie. Especially women lol"
6. A post authored by username "lil duval," that was re-tweeted[10] by the Respondent stating: "Ladies always remember, you are who you let f[---] you"

---

[10] At trial, the Respondent defined "retweeting" as "an endorsement of another statement made by somebody else."

7. A post authored by username "lil duval," that was re-tweeted by the Respondent stating: "Ladies y'all might wanna stop showing who y'all f[---]ing cuz it might make a better n[----] not even wanna f[---] wit u."
8. A post authored by another user, that was re-tweeted by the Respondent and commented on by the Respondent with a laughing and a thumbs up emoji. The post by the other user stated, "everytime a DC n[----] tell me 'I'm too cute to be from Baltimore' I tell him he's to straight to be from DC. fomf f[--]got"

The social media accounts on which these posts and comments appeared were linked to the Respondent's law firm website and were accessible by the public without privacy restrictions. The Respondent also used his social media accounts to advertise his services and provide legal information.

(Citations omitted).

## THE HEARING JUDGE'S CONCLUSIONS OF LAW

The hearing judge concluded that Respondent violated MARPC 19-308.1(b) and 19-308.4(a), (b), (c), (d), and (e).

### MARPC 19-308.1 – Bar Admission and Disciplinary Matters ("Rule 8.1")[11]

The hearing judge concluded that Respondent violated Rule 8.1(b) by answering "No" to Question 15(a)(i) & (ii) on his initial bar application, Question 6 on the affirmation,

---

[11] Rule 8.1(b) provides:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: . . .

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 19-301.6 (1.6).

and failing to supplement his application materials to include information relating to his addiction to Percocet and use of Suboxone.[12] The hearing judge determined that Respondent understood the duty to supplement his answers, as demonstrated by his supplements to other portions of the application. The hearing judge noted that Mr. Deeley and Mr. Quinn were undeniably interested in Respondent's history of substance use. The hearing judge rejected Respondent's defense that he failed to disclose the information because he was not specifically asked about it as disingenuous and unbelievable.

## MARPC 19-308.4 – Misconduct ("Rule 8.4")

The hearing judge concluded that Respondent violated Rule 8.4(a) for his violations of Rules 8.1(b) and 8.4(b), (c), (d), and (e).[13]

---

[12] "Suboxone is the brand name for a prescription medication used in treating those addicted to opioids, illegal or prescription." Jeffery Juergens, *What is Suboxone?, Addiction Center* (June 17, 2021), https://www.addictioncenter.com/treatment/medications/suboxone/, archived at https://perma.cc/2BYV-2QT6.

[13] Rule 8.4 provides, in pertinent part:

It is professional misconduct for an attorney to:
(a) violate or attempt to violate the Maryland Attorneys' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this section[.]

The hearing judge concluded that Respondent violated Rule 8.4(b) through his criminal assault of J.T. and violation of a protective order. The hearing judge found that Respondent committed a second-degree assault by causing offensive physical contact to J.T. in squeezing yogurt on her head. The hearing judge also found that Respondent knowingly and intentionally violated the various protective orders through his: January 23, 2019 email to J.T.; January 23, 2019 text message to J.T.; March 2019 telephone conversation with J.T.; May 1, 2019 telephone conversation with J.T.; and May 9, 2019 meeting with J.T. The hearing judge opined that Respondent's actions indicated a lack of the characteristics relevant to the practice of law because they involved violence, dishonesty, interference with the administration of justice, and indifference to legal obligation.

The hearing judge concluded that Respondent violated Rule 8.4(c) by engaging in conduct involving deceit or misrepresentation. Specifically, the hearing judge found that Respondent failed to correct his answers to Questions 15(a)(i) and (ii) and failed to disclose his substance abuse and addiction to Mr. Deeley and Mr. Quinn.

The hearing judge concluded that Respondent violated Rule 8.4(d) as a result of the criminal conduct which violated Rule 8.4(b). The hearing judge opined that Respondent's many acts of misconduct, including the conduct violative of Rules 8.1 and 8.4, demonstrated a disregard for the law and brought the legal profession into disrepute.

The hearing judge concluded that Respondent violated Rule 8.4(e) for authoring and sharing biased and prejudicial language on his public social media accounts which he also used to advertise his legal practice. The hearing judge noted that the words used and shared

15

by Respondent "speak for themselves" and are replete with racial, homophobic, and sexist slurs, frequently demeaning women. The hearing judge determined that the content was prejudicial to the administration of justice, because it reflected poorly on the legal profession in the eyes of a reasonable member of the public. The hearing judge concluded that Respondent was acting in his professional capacity with respect to his social media use and violated Rule 8.4(e).

### THE HEARING JUDGE'S FINDINGS OF AGGRAVATING AND MITIGATING FACTORS

We have long identified several aggravating and mitigating factors to be considered in attorney grievance matters. Aggravating factors include:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MARPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Keating*, 471 Md. at 639, 243 A.3d at 535 (citation and other markings omitted). Mitigating factors include:

> [(1)] absence of a prior disciplinary record; [(2)] absence of a dishonest or selfish motive; [(3)] personal or emotional problems; [(4)] timely good faith efforts to make restitution or to rectify consequences of misconduct; [(5)] full and free disclosure to disciplinary board or cooperative attitude toward proceedings; [(6)] inexperience in the practice of law; [(7)] character or reputation; [(8)] physical or mental disability or impairment; [(9)] delay in disciplinary proceedings; [(10)] interim rehabilitation; [(11)] imposition of other penalties or sanctions; [(12)] remorse; and [(13)] remoteness of prior offenses.

16

*Keating*, 471 Md. at 639–40, 243 A.3d at 536 (citation omitted).

**Aggravating Factors**

The hearing judge found the presence of the following aggravating factors: dishonest or selfish motive; pattern of misconduct; multiple offenses; and refusal to acknowledge the wrongful nature of conduct. The hearing judge found that Respondent demonstrated a dishonest or selfish motive by failing to disclose his addiction to Percocet and illegal purchase of other drugs during the Bar admission process, or to Mr. Deeley or Mr. Quinn. The hearing judge also found that Respondent demonstrated a pattern of misconduct during the Bar admission process, through his repeated violations of the temporary and final protective orders, and the numerous social media posts or comments containing biased and prejudicial language.

The hearing judge found that Respondent refused to acknowledge the wrongful nature of his conduct throughout the disciplinary proceedings. As an example, the hearing judge noted that Respondent attempted to minimize the violation of the protective order on January 23, 2019 by explaining that the communications were "business related" and somehow justifiable because he had a missed call from J.T.'s number earlier that day. The hearing judge compared Respondent's assertions—that his use of Percocet was never an impairment that would affect his ability to practice law—to a drunk driver who points to his lack of accidents as justification for his behavior. The hearing judge opined that the "Respondent clearly could benefit from addiction counseling; however, he continues to deny a substance abuse problem."

17

**Mitigating Factors**

The hearing judge found the following mitigating factors to be present: absence of prior disciplinary record; personal and emotional problems; timely good-faith efforts to rectify the consequences of his misconduct; cooperative attitude toward the proceedings; positive reputation in the legal community; and interim rehabilitation.

First, the hearing judge found that Respondent had no prior disciplinary record. Second, the hearing judge found that Respondent experienced personal and emotional problems that affected his judgment and behavior. The hearing judge credited the testimony of Ms. Markus, a licensed clinical social worker who saw Respondent on a regular basis for a few months beginning in April 2019, and again in October 2019 for regular therapy through April 2020. Ms. Markus testified that the spring 2019 therapy sessions were related to issues dealing with relationship struggles and the resulting emotional consequences and traumatic responses.

Third, the hearing judge found that Respondent made good-faith efforts to rectify the consequences of his misconduct regarding his social media content. The hearing judge credited Respondent's testimony that he regretted posting and sharing inappropriate language on his social media accounts linked to his professional profile, understood that such content has no place in a professional setting, and that it was not his intention to denigrate any group. Respondent testified that he perceived his social media audience to be social friends and that, in his cultural experiences, the language was simply commonplace communication. The hearing judge acknowledged that, after being made aware of the misconduct in the course of Bar Counsel's investigation, Respondent

preserved the content at issue for the record, and then deleted the content, unlinked some of his social media accounts from his professional website, and ceased posting content that others may find offensive.

Fourth, the hearing judge determined that Respondent demonstrated a cooperative attitude toward the proceedings by timely providing written responses to Bar Counsel's requests for information and voluntarily appearing at the offices of the Attorney Grievance Commission on September 23, 2019 to provide a statement under oath.

Fifth, the hearing judge found that Respondent enjoyed a positive reputation in the legal community. The hearing judge credited the testimony of six character witnesses called in mitigation, including Mr. Paul Duffy, Esq., who employed the Respondent for about five years during law school and after his admission to the Maryland Bar, and Mr. Yoseph Orshan, Esq., a current colleague of the Respondent. The hearing judge recounted Mr. Duffy's testimony that he noticed nothing unusual about Respondent's demeanor and stated that Respondent "was always very solid." Mr. Duffy relied and counted on Respondent, and testified that Respondent worked incredibly hard, was always prepared, and concerned about clients. The hearing judge also recounted the testimony of Mr. Orshan, who corroborated many of Mr. Duffy's sentiments regarding the Respondent's work ethic, dependability, and honesty. Mr. Orshan, who occupies the office next to Respondent, stated that he had "never seen any interactions between him and anybody that was anything other than professional and positive."

Sixth, the hearing judge found that Respondent sought and received interim rehabilitation in the form of therapy. The hearing judge found that Respondent voluntarily

19

sought therapy to address the emotional impact of his break-up with J.T. and then again to deal with the stress of Bar Counsel's investigation. The hearing judge recounted that Respondent's therapist, Ms. Markus, testified that she provided no therapy related to substance abuse because "it never came up. That wasn't an issue that he struggled with."

The hearing judge observed that Respondent's decision in 2016 to seek professional help for his addiction and emotional problems in the spring of 2019, indicated maturity and self-awareness; as did his immediate and appropriate response to Bar Counsel's queries regarding his social media accounts in September 2019. However, the hearing judge criticized Respondent's complete lack of candor regarding his addiction and his continuous attempts to minimize the potential impact of addiction upon his ability to practice law as indicating otherwise. The hearing judge also considered Respondent's attempts to minimize and explain his assault on J.T., and his subsequent violations of the protective orders, as demonstrating a pattern of distorting the truth for personal benefit as well as a pattern of disregard for the law.

## STANDARD OF REVIEW

This Court has "original and complete jurisdiction" in attorney grievance matters and upon review, we "conduct[] an independent review of the record." *Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 253, 950 A.2d 798, 806 (2008) (citations omitted). We "generally defer to the credibility findings of the hearing judge," *Attorney Grievance Comm'n v. Johnson*, 472 Md. 491, 527, 247 A.3d 767, 789 (2021) (citations omitted), and will not disturb the hearing judge's findings of fact unless they are clearly erroneous. *Keating*, 471 Md. at 641, 243 A.3d at 536 (citations omitted); *Attorney Grievance Comm'n*

20

*v. Woolery*, 462 Md. 209, 230, 198 A.3d 835, 847 (2018) ("As far as what evidence a hearing judge must rely upon to reach his or her conclusions, we have said that the hearing judge may pick and choose what evidence to believe.") (citation and quotation marks omitted). We review the hearing judge's conclusions of law without deference. *Keating*, 471 Md. at 641, 243 A.3d at 536 (citations omitted). Any exceptions filed by Bar Counsel or Respondent must be "proven by the requisite standard of proof outlined in Md. Rule 19-727(c)."[14] *Id.* at 641, 243 A.3d at 536–37 (citation and quotation marks omitted).

### EXCEPTIONS TO THE HEARING JUDGE'S FINDINGS OF FACT

Petitioner did not except to any of the hearing judge's findings of fact. Respondent excepted to several of the hearing judge's findings.

### Respondent's Credibility

Respondent excepts to the hearing judge's finding of fact that he lacked credibility, specifically as it related to Respondent's assertion that he did not disclose his prior substance abuse because he was never "specifically" asked about it. According to Respondent, Mr. Deeley's testimony reflected that he had a vague recollection of his conversations with Respondent, but no independent recollection of what was discussed.

We overrule Respondent's exception. As noted above, we review a hearing judge's findings of fact for clear error, i.e., with deference. *Keating*, 471 Md. at 641, 243 A.3d at 536 (citations omitted). As we have explained, the reason we "generally defer[] to the

---

[14] Maryland Rule 19-727(c) states: "Bar Counsel has the burden of proving the averments of the petition by clear and convincing evidence. If the attorney asserts an affirmative defense or a matter of mitigation or extenuation, the attorney has the burden of proving the defense or matter by a preponderance of the evidence."

21

credibility findings of the hearing judge [is] because the hearing judge is in the best position to evaluate the credibility of the witnesses and to decide which one to believe[.]" *Johnson*, 472 Md. at 527, 247 A.3d at 789. As part of that credibility evaluation, the hearing judge "may pick and choose what evidence to believe." *Woolery*, 462 Md. at 230, 198 A.3d at 847 (citation and quotation marks omitted).

In *Johnson*, we overruled an exception to a hearing judge's finding relative to a credibility determination, explaining that:

> [T]he hearing judge was in the best position to determine the credibility of the witnesses presented at the evidentiary hearing when she found that Mr. Johnson did not introduce any credible evidence establishing [a mitigating factor] when the misappropriation occurred. . . . [T]he credibility determination made by the hearing judge—after considering the evidence and testimony []—is one that this Court defers to absent clear error. Md. Rule 19-741(b)(2)(B) ("Th[is] Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."). We find no clear error. The hearing judge was in the best position to evaluate the veracity of Mr. Johnson's explanation regarding his alleged violations of the Rules when she found that Mr. Johnson failed to prove by a preponderance of the evidence that he was suffering from a physical disability at the time of the misconduct. We therefore overrule Mr. Johnson's exception.

472 Md. at 528–29, 247 A.3d at 789 (other citations, markings, and paragraph break omitted).

The same applies here. The hearing judge "was in the best position to determine the credibility of" the testimony of Respondent and Mr. Deeley. *Id.*, 247 A.3d at 789. The hearing judge credited the testimony of Mr. Deeley and afforded less credence to Respondent's testimony regarding the ample opportunity Respondent had to disclose his substance use to the character committee but did not. Respondent's contention to the contrary relative to the hearing judge's credibility determination does not persuade us that

the hearing judge's finding constituted "clear error." *Id.*, 247 A.3d at 789. Finding no error in the hearing judge's credibility assessment, we overrule Respondent's exception.

**Admission of Exhibit 6**

Respondent excepts to the hearing judge's admission of Exhibit 6, the statement under oath obtained by Bar Counsel on September 23, 2019 and any findings emanating therefrom. According to Respondent, Bar Counsel attempted to admit the entire statement as deposition testimony, and the hearing judge erred as a matter of law in admitting it as such. We overrule Respondent's exception.

The investigatory process by Bar Counsel stemming from complaints filed against attorneys are delineated in Maryland Rules 19-701–761. The process begins with the filing of a complaint by an individual or initiated by the Attorney Grievance Commission. Md. Rule 19-711. Thereafter, Bar Counsel must "make an inquiry concerning every complaint that is not facially frivolous, unfounded, or duplicative." Md. Rule 19-711(b)(1). As part of that investigation, Md. Rule 19-712(a)(1) states that "[t]he Chair of the Commission may authorize Bar Counsel to issue a subpoena to compel the attendance of witnesses and the production of designated documents . . . if . . . the subpoena is necessary to and in furtherance of an investigation being conducted by Bar Counsel[.]" As another aspect of its investigation, Md. Rule 19-713 further states that "[b]efore a Petition for Disciplinary or Remedial Action is filed, Bar Counsel . . . may perpetuate testimony or other evidence relevant to a claim or defense that may be asserted in the expected action. The perpetuation of evidence shall be governed by [Md.] Rule 2-404[,]" which, in the case of "[d]epositions[,] may be used to the extent permitted by [Md.] Rule 2-419." Maryland

23

Rule 2-419, in turn, states that "[t]he deposition of a party . . . may be used by an adverse party for any purpose." Md. Rule 2-419(a)(2).

Maryland Rule 19-712(a)(1) is directed "to compel the attendance of witnesses" and Md. Rule 19-713 is aimed at the "testimony or other evidence relevant[.]" Once the witness appears, voluntarily or as compelled to pursuant to Md. Rule 19-712, testimony propounded by a sworn statement would fall under the purview of Md. Rule 19-713. That testimony is governed by Md. Rules 2-404 and 2-419, which allow the use of a deposition by an adverse party "for any purpose." Md. Rule 2-419(a)(2).

Exhibit 6 contains Respondent's statement under oath, taken September 23, 2019. Bar Counsel commences the proceedings by stating that "we are here for the investigative statement under oath of [Respondent] pursuant to Maryland Rule 19-712[.]" Bar Counsel also states, after questioning whether Respondent was familiar with the procedures of a deposition, that "[t]his will be conducted similarly to a deposition." We agree with Respondent that Bar Counsel did not specifically indicate that the deposition was taken pursuant to Md. Rule 19-713. That omission, however, is immaterial. Bar Counsel correctly acknowledged Respondent's *presence* pursuant to Md. Rule 19-712. Maryland Rule 19-712 is directed "to compel the attendance of witnesses" and was satisfied once Respondent's attendance had been registered. The subsequent statement taken under oath, the deposition, falls under the purview of Md. Rule 19-713 which addresses "testimony[.]" The hearing judge correctly identified that statement under oath as testimony governed by Md. Rule 19-713, and as an extension of Md. Rules 2-404 and 2-419 which permit the use of a deposition by an adverse party, here Bar Counsel, "for any purpose." Accordingly,

24

we overrule Respondent's exceptions to the hearing judge's findings of fact based on Exhibit 6.

<strong>CONCLUSIONS OF LAW</strong>

The hearing judge found, by clear and convincing evidence, that Respondent violated MARPC 19-308.1(b), and 19-308.4(a), (b), (c), (d), and (e). We agree.

<strong>MARPC 19-308.1 – Bar Admission and Disciplinary Matters</strong>

MARPC 19-308.1(b) ("Rule 8.1(b)") provides:

> An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not: . . .

> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by [Md.] Rule 19-301.6 (1.6).

The hearing judge concluded that Respondent violated Rule 8.1(b) for: responding "No" to Questions 15(a)(i) and (ii) on the Bar Application and Question 6 on the Affirmation by General Bar Applicant; failing to supplement his Bar Application to include information that he was addicted to Percocet, sought treatment for the addiction, and was prescribed Suboxone; and failing to disclose that information to Mr. Deeley and Mr. Quinn during the bar admission process.

Respondent excepts to this conclusion. According to Respondent, the specific language of Question 15(a)(i)—"Do you have any condition or impairment (such as substance [or] alcohol abuse[]) that in any way *currently affects*, or[] *could affect* your ability to practice law in a competent and professional manner?"—indicated that a

25

subjective response was required. According to Respondent, he subjectively determined that he did not use substances in a way that affected his ability to practice law in a competent and professional manner. For the same reason, Respondent also excepts to the hearing judge's conclusion of law that he violated Rule 8.1(b) for failing to disclose to Mr. Deeley and Mr. Quinn his recent addiction to Percocet and his subsequent and ongoing treatment in the form of a prescription for Suboxone.

As the hearing judge noted, whether Respondent appreciated his substance abuse issues when he initially completed his application to the bar, he most certainly did by the summer of 2016 when he began to take Suboxone on a daily basis. As made clear in Comment [1] of Rule 8.1, the rule "also requires affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware." In *Attorney Grievance Comm'n v. Van Dusen*, we explained that an applicant to the Maryland Bar is "under an obligation to supplement [any] response[s] with any material information up until . . . admission[.]" 443 Md. 413, 428, 116 A.3d 1013, 1022 (2015). The failure to do so is a violation of Rule 8.1(b). *Id.*, 116 A.3d at 1022. We concluded that Van Dusen violated Rule 8.1(b) for not supplementing his application or otherwise informing the SBLE of his criminal activity and pending charges during the pendency of his bar application. *Id.*, 116 A.3d at 1022. Similarly, in the instant case, we agree with the hearing judge that Respondent knowingly failed to supplement his answers to Question 15(a)(i) and (ii), and that he failed to disclose that information to the character committee. Accordingly, we conclude that Respondent violated Rule 8.1(b) and overrule Respondent's exception.

26

## MARPC 19-308.4 – Misconduct

The hearing judge concluded that Respondent violated MARPC 19-308.4 ("Rule 8.4") (a), (b), (c), (d), and (e).  Respondent excepts to each of those conclusions.

### Rule 8.4(a)

Rule 8.4(a) states: "It is professional misconduct for an attorney to: (a) violate or attempt to violate the [MARPC], knowingly assist or induce another to do so, or do so through the acts of another[.]"  The hearing judge found that Respondent violated Rule 8.4(a) because of his other Rule violations.  As part of his exceptions to the hearing judge's determination that he violated other Rules, Respondent excepts to this conclusion.

We overrule Respondent's exception.  As we often note, "when an attorney violates a rule of professional conduct, the attorney also violates M[A]RPC 8.4(a)."  *Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 664, 144 A.3d 827, 853 (2016); *Attorney Grievance Comm'n v. Powers*, 454 Md. 79, 107, 164 A.3d 138, 154 (2017) (citation omitted) ("An attorney violates Rule 8.4(a) when he or she violates other Rules of Professional Conduct.").  Since we conclude that Respondent violated other Rules, we also determine that Respondent violated Rule 8.4(a).

### Rule 8.4(b)

Rule 8.4(b) provides that: "It is professional misconduct for an attorney to: . . . (b) commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects[.]"  The hearing judge found that Respondent violated Rule 8.4(b) through the commission of second-degree assault and the violation of a protective order.  Respondent excepts to this conclusion because, in his view, Bar Counsel

has not sustained its burden of providing clear and convincing evidence to support that conclusion.

As Comment [2] to Rule 8.4 makes clear, an attorney is only "professionally answerable . . . for offenses that indicate [a] lack of those characteristics relevant to law practice[]" and specifies that "[o]ffenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." As we recently explained, "it is not a prerequisite to a finding of a violation of Rule 8.4(b) that the attorney have been charged with, or convicted of, a violation of the criminal statute." *Attorney Grievance Comm'n v. Yates*, 467 Md. 287, 301, 225 A.3d 1, 9 (2020) (citations omitted). Rather, "[t]o establish a violation of Rule 8.4(b), there need only be clear and convincing evidence of a criminal act." *Id.* at 301, 225 A.3d at 9; *see also Attorney Grievance Comm'n v. Gracey*, 448 Md. 1, 25, 136 A.3d 798, 813 (2016) ("It is well established that a conviction is not required to find a violation of M[A]RPC 8.4(b). The crux of the 8.4(b) analysis, rather, is whether an attorney's criminal act reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects.") (citations and quotation marks omitted).

In this case, we conclude that there was clear and convincing evidence of a criminal act—second-degree assault, prohibited by Md. Code, Criminal Law § 3-203—in violation of Rule 8.4(b). As the pattern jury instructions make clear, the elements for a second-degree assault in the form of battery are the non-accidental causing of offensive physical contact that is not consented to. MPJI-Cr 4:01. On January 8, 2019, Respondent caused

28

offensive physical contact with J.T. Respondent admitted that, at the time of the incident, he was upset and did so to intentionally humiliate J.T. Following the incident, J.T. began to cry, ran away from Respondent, called the police, and filed for criminal charges and a protective order. We conclude that Respondent's conduct met all of the requirements of a second-degree assault. Respondent intentionally caused offensive physical contact with J.T., which J.T. did not consent to. As such, we overrule Respondent's contention that this interaction was consensual and conclude that Respondent violated Rule 8.4(b).

Respondent also violated the terms of the protective orders, which, pursuant to § 4-509 of the Family Law Article of the Maryland Code, is a misdemeanor. We agree with the hearing judge's conclusion that Respondent "knowingly and intentionally violated the various protective orders as follows: January 23, 2019 email to J.T.; January 23, 2019 text message to J.T.; March 2019 telephone conversation with J.T.; May 1, 2019 telephone conversation with J.T.; and May 9, 2019 meeting with J.T." Accordingly, we overrule Respondent's exceptions regarding the Rule 8.4(b) violation.

### Rule 8.4(c)

Pursuant to Rule 8.4(c): "It is professional misconduct for an attorney to: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The hearing judge found that Respondent violated Rule 8.4(c) for "engaging in conduct involving deceit or misrepresentation," for failing to correct his answers to questions 15(a)(i) and (ii) on his application to the Bar as well as failing to properly disclose his substance abuse issues to Mr. Deeley and Mr. Quinn. As a continuation of his previous exception to the hearing

29

judge's finding that his answers on his bar application and responses to the character committee constituted failures, Respondent excepts to this conclusion as well.

"Not all attorney statements that turn out to be untrue violate [Rule] 8.4(c)[;]" we have "generally required that there be a conscious objective or purpose to the misrepresentation or omission [i.e.,] intentional failures to communicate truthful information, as opposed to negligent falsehoods" to find a Rule 8.4(c) violation. *Attorney Grievance Comm'n v. Stanalonis*, 445 Md. 129, 147, 126 A.3d 6, 16–17 (2015) (citations and quotation marks omitted). The "prohibition [of Rule 8.4(c)] is not limited to conduct in the practice of law, but extends to actions by an attorney in business or personal affairs that reflect on the individual's character and fitness to practice law." *Id.* at 146–47, 126 A.3d at 16. These affairs include the process of applying to the bar. *See, e.g.*, *Attorney Grievance Comm'n v. Slate*, 457 Md. 610, 643, 180 A.3d 134, 154 (2018); *Van Dusen*, 443 Md. at 430, 116 A.3d at 1023.

In *Slate*, we explained that a Respondent's "silence with regard to required information after he submitted his bar application[] constituted acts that involved dishonesty, deceit, and misrepresentation, and violated M[A]RPC 8.4(c)." 457 Md. at 643, 180 A.3d at 154. We reached a similar conclusion in *Van Dusen* where we explained that the failure to disclose prior criminal conduct when applying to the bar and failing to correct the omission after admission to the bar constituted a violation of Rule 8.4(c). 443 Md. at 430, 116 A.3d at 1023. The same applies here. Respondent's failure to properly disclose his substance abuse issues as part of his bar application materials or during the character

30

investigation constitutes "engaging in conduct involving deceit or misrepresentation" in violation of Rule 8.4(c). Accordingly, as before, we overrule this exception.

## Rule 8.4(d)

Rule 8.4(d) expressly states that: "It is professional misconduct for an attorney to: . . . (d) engage in conduct that is prejudicial to the administration of justice[.]" The hearing judge found that Respondent violated Rule 8.4(d) based on his violations of Rule 8.4(b) and that his conduct demonstrated disregard for the law which brings the legal profession into disrepute. As a continuation of his prior exceptions to the Rule 8.4(b) violations, Respondent excepts to this conclusion of the hearing judge as well.

As we have explained with regard to Rule 8.4(d), "[c]onduct which is likely to impair public confidence in the profession, impact the image of the legal profession and engender disrespect for the court is conduct prejudicial to the administration of justice." *Attorney Grievance Comm'n v. Brigerman*, 441 Md. 23, 40–41, 105 A.3d 467, 477 (2014) (citation omitted); *Attorney Grievance Comm'n v. Markey*, 469 Md. 485, 501, 230 A.3d 942, 951 (2020) (citation and internal markings omitted) ("Where a lawyer engages in conduct that is related to the practice of law, the lawyer violates M[A]RPC 8.4(d) if the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public."). "Where a lawyer engages in . . . conduct that is entirely unrelated to the practice of law[,] the lawyer violates M[A]RPC 8.4(d) if the lawyer's conduct is criminal or so egregious as to make the harm, or potential harm, flowing from it patent." *Id.* at 501–02, 230 A.3d at 951 (citation and markings omitted).

31

In the case at bar, we agree with the hearing judge that Respondent's criminal acts and other misconduct violated Rule 8.4(d) and therefore overrule Respondent's exceptions. "[A]n attorney who engages in conduct that violates both Rules 8.4(b) and (c) also usually violates Rule 8.4(d)." *Attorney Grievance Comm'n v. Ndi*, 459 Md. 42, 63, 184 A.3d 25, 37 (2018); *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 197, 118 A.3d 958, 977 (2015) ("Respondent's [conduct] in violation of M[A]RPC 8.4(c), is also a violation of M[A]RPC 8.4(d)."). As noted above, Respondent engaged in criminal acts in violation of Rule 8.4(b) and misrepresentations in violation of Rule 8.4(c). These violations "negatively impact[ed] the perception of the legal profession" in the public eye and are also a violation of Rule 8.4(d). *Markey*, 469 Md. at 501, 230 A.3d at 951. Accordingly, Respondent's exception is overruled.

## Rule 8.4(e)

Rule 8.4(e) provides that:

> It is professional misconduct for an attorney to: . . . (e) knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this section[.]

The hearing judge found that Respondent violated Rule 8.4(e) for permitting, authoring, sharing, and endorsing biased and prejudicial language on his public social media accounts which he used to advertise his legal practice. Respondent excepts to this conclusion, arguing that the social media posts were made within the context of appropriate social discourse within his social circle.

32

As we explained in *Markey*, the plain language of Rule 8.4(e) sets forth four requirements to find a rule violation: "a lawyer must: (1) when acting in a professional capacity, (2) knowingly manifest by words or conduct bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation, or socioeconomic status, (3) when such action is prejudicial to the administration of justice, and (4) not legitimate advocacy." 469 Md. at 509, 230 A.3d at 955.

Respondent does not argue that his posts were related to legitimate advocacy. We also agree with the hearing judge that the contents of Respondent's posts, replete with racial, homophobic, and sexist remarks, conveyed inappropriate bias and were prejudicial to the administration of justice. The "casual usage of racial epithets in hip-hop music" and various cultural circles does not mollify the prejudicial impact of biased terminology for purposes of a Rule 8.4(e) violation. *Attorney Grievance Comm'n v. Sanderson*, 465 Md. 1, 65, 213 A.3d 122, 159 (2019); *see also Montague v. State*, 471 Md. 657, 243 A.3d 546 (2020) (discussing "the interconnected relationship between contemporary culture and rap music" as it relates to the admissibility of jailhouse rap lyrics as substantive evidence).

Respondent argues that his social media activities at issue were not conducted while he was "acting in a professional capacity." We overrule Respondent's exception. In *Attorney Grievance Comm'n v. Basinger*, 441 Md. 703, 713, 109 A.3d 1165, 1171 (2015), we concluded that an attorney who sent derogatory letters to a client on his firm's letterhead was acting "at least partially in his capacity as [the client's] lawyer." We reach the same determination in this case. Respondent's social media accounts contained profile biographies that advertised his law firm's website and contact information. His

username's—"@THE_Chris_Law" and "chris_law_"—contained references to his law practice. The offending posts are interspersed between other posts advertising his legal services and providing legal information. Accordingly, we conclude that Respondent's posts were conducted as part of his professional capacity as prohibited by Rule 8.4(e) and overrule Respondent's exception.

## SANCTION

Respondent requests a sanction that would not prohibit him from continuing to practice law. Petitioner recommends disbarment.

As we consistently emphasize in attorney discipline matters, the purpose of sanctioning an attorney found to be in violation of the MARPC is to protect the public and our profession; not to punish the attorney. *Keating*, 471 Md. at 651, 243 A.3d at 543 (citations omitted); *Woolery*, 462 Md. at 250, 198 A.3d at 859 ("The sanction we impose is intended to protect the public and public's confidence in the legal profession.") (citation and quotation marks omitted). "We protect the public through sanctions against offending attorneys in two ways: through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Framm*, 449 Md. at 665, 144 A.3d at 853–54 (citation omitted). "Ultimately, we impose a sanction that is commensurate with the nature and gravity of the violations and the intent with which they are committed." *Attorney Grievance Comm'n v. Frank*, 470 Md. 699, 741, 236 A.3d 603, 629 (2020) (internal citations and quotation marks omitted).

"When deciding the proper sanction for an errant attorney's conduct, we do not simply tote up the number of possible violations and aggravating factors to arrive at an appropriate sanction." *Keating*, 471 Md. at 651, 243 A.3d at 543 (citation and internal quotation marks omitted). "[T]he severity of an appropriate sanction depends on the circumstances of each case, . . . and any mitigating [or aggravating] factors." *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 223–24, 223 A.3d 976, 1004 (2020) (citations omitted). As discussed above, the hearing judge found the existence of the following aggravating factors: dishonest or selfish motive; pattern of misconduct; multiple offenses; and refusal to acknowledge the wrongful nature of conduct. Based on his prior exceptions to the underlying facts and conclusions of law, Respondent excepts to all of the hearing judge's findings of aggravating factors. We overrule Respondent's exceptions to the hearing judge's findings regarding aggravating factors in conformance with and as an extension of our previous analysis of Respondent's Rules violations. The hearing judge also found the existence of the following mitigating factors: absence of prior disciplinary record; personal or emotional problems; good-faith efforts to rectify the consequences of his misconduct; cooperative attitude toward the proceedings; positive reputation in the legal community; and voluntarily seeking and receiving interim rehabilitation in the form of therapy.

In the case at bar, we determine that Respondent's violations of Rules 8.1(b), 8.4(a), (b), (c), (d), and (e) warrant disbarment. As we have consistently emphasized, "[a] lawyer must, at a minimum, be trustworthy." *Van Dusen*, 443 Md. at 416, 116 A.3d at 1015. An applicant to the Maryland Bar "must disclose to the [SBLE] and this Court information that

bears on that trait. Failure to satisfy those requirements may prevent admission to the bar or, when discovered, result in disbarment." *Id.*, 116 A.3d at 1015. As we explained, "disbarment is warranted because the deliberate failure to disclose material information plainly reflects on the truthfulness and candor of the applicant and no character qualification to practice law is more important than truthfulness and candor." *Id.* at 432, 116 A.3d at 1024–25 (citing *Attorney Grievance Comm'n v. Keehan*, 311 Md. 161, 169, 533 A.2d 278 (1987) (disbarring lawyer who withheld material information relating to his prior employment experience)); *Attorney Grievance Comm'n v. Hunt*, 435 Md. 133, 143–44, 76 A.3d 1214, 1220 (2013) (disbarring attorney who failed to disclose past criminal conduct); *Attorney Grievance Comm'n v. Gilbert*, 307 Md. 481, 496–497, 515 A.2d 454, 462 (1986) (disbarring an attorney who failed to disclose involvement in a civil suit)).

In *Slate*, 457 Md. at 647–48, 180 A.3d at 156–57, we concluded that disbarment was the appropriate sanction for an attorney who had violated Rules 8.1(a) and (b), 8.4(c) and (d) for failing to disclose relevant information on his application to the Maryland Bar:

> Slate knowingly engaged in dishonesty in multiple instances. He deliberately concealed the Opinions and the findings therein by: responding "No" to the catchall question in his bar application; falsely stating under oath that the representations in his bar application remained accurate; withholding the required information during the character interview and the meeting with Brennan and Thomas; and failing to supplement his bar application. Additionally, Slate misrepresented to Bar Counsel that he had provided all required information. There is little doubt that, had Slate's dishonesty come to light during the bar application process, we would have determined that he lacked the character and fitness necessary for admission to the Bar of Maryland.

*Id.* at 649, 180 A.3d at 157 (footnote omitted). Similarly, in *Attorney Grievance Comm'n v. Gracey*, we succinctly stated that "[t]he fact that Rules 8.4(a), (b), (c) and (d) were

36

violated also supports the imposition of the most severe sanction." 448 Md. 1, 28, 136 A.3d 798, 814 (2016).

In *Van Dusen*, we disbarred a newly admitted lawyer who was engaging in criminal activity throughout the process of applying to the bar, without disclosing that information as part of his application. 443 Md. at 416, 116 A.3d at 1015. We found Van Dusen not to be trustworthy. *Id.* at 433, 116 A.3d at 1025 ("Mr. Van Dusen committed criminal acts that adversely reflect on his fitness to practice law. . . . Mr. Van Dusen also failed to disclose material information concerning his activities, their detection, investigation, and prosecution to SBLE and this Court. This demonstrated a serious lack of candor and truthfulness.").

As in *Slate* and *Van Dusen*, Respondent did not truthfully answer a question on his application to the Bar of this state regarding his substance abuse and continued to conceal that information during the character committee's investigation by failing to supplement his application materials or otherwise provide pertinent information. While not as egregious as the conduct in *Van Dusen*, Respondent also engaged in criminal conduct relating to J.T, including a second-degree assault and multiple protective order violations. *See also Attorney Grievance Comm'n v. Young*, 445 Md. 93, 108, 124 A.3d 210, 219 (2015) ("That Respondent's misconduct did not involve the practice of law . . . does not alter the outcome."). Finally, Respondent's social media content did not conform with the conduct required of attorneys acting in professional capacities in violation of Rule 8.4(e).

The virtues of character, honesty, and integrity are the cornerstone of our legal profession. "[A]bsent compelling extenuating circumstances, disbarment is ordinarily the

sanction for intentional dishonest conduct[.]" *Attorney Grievance Comm'n v. Mahone*, 451 Md. 25, 46, 150 A.3d 870, 883 (2016) (citation and quotation marks omitted). We determine that the hearing judge's findings of mitigating factors—absence of prior disciplinary record; personal or emotional problems; good-faith efforts to rectify the consequences of his misconduct; cooperative attitude toward the proceedings; positive reputation in the legal community; and voluntarily seeking and receiving interim rehabilitation in the form of therapy—are not sufficient to avoid disbarment.[15] Respondent's failure during the admissions process and thereafter, had they been properly disclosed, "may [have] prevent[ed his] admission to the bar[.]" *Van Dusen*, 443 Md. at 416, 116 A.3d at 1015. In the course of these proceedings, they have been "discovered[ and will] result in disbarment." *Id.*, 116 A.3d at 1015.

---

[15] Respondent asks this Court to consider that his "youthfulness, absence of prior disciplinary matters, work ethic, reputation in the legal community, competence, diligence and zealousness allow for redemption and rehabilitation of any character defects that the Court may find that caused the Respondent to come before this Court." As Judge Harrell noted in *Att'y Grievance Comm'n v. Palmer*, in the context of disbarring an attorney:

> This is not to say, however, that these mitigating factors become irrelevant should Respondent seek to be readmitted to the Bar. While we recognize the stigma that attaches to the sanction of disbarment, . . . practically speaking, a disbarred attorney, just like one assessed with an open-ended indefinite suspension, may reapply for admission at any time after imposition.

417 Md. 185, 215 n.16, 9 A.3d 37, 55 n.16 (2010); *see also* Md. Rule 19-752 (describing the process and requirements to apply for reinstatement after disbarment); *In re Cooke*, 425 Md. 652, 686, 42 A.3d 610, 630–31 (2012) (describing this Court's "decision-making" relative to reinstatement). We recognize that the underlying conduct that brings this matter before us is not predicated on Respondent's direct legal representation of clients. Regretfully, that conduct still warrants disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CHRISTOPHER EDWARD VASILIADES.**